Howard R. WARD, Bowling Green, Ohio,
Plaintiff,

v.

NORTHERN OHIO TELEPHONE COM-
PANY, a corporation, Bellevue, Ohio,
Defendant.

Civ. No. 8553.

United States District Court
N. D. Ohio, W. D.

March 21, 1966.

McDonald, Hopkins & Hardy, Cleve-
land, Ohio, for plaintiff.

Eastman, Stichter, Smith & Bergman, Toledo, Ohio, Power, Griffith, Jones & Bell, Columbus, Ohio, for defendant.

YOUNG, District Judge.

Defendant has moved for summary judgment on the grounds that the statutory limitation period has elapsed and that plaintiff is not the real party in interest.

At the commencement of this suit plaintiff was the operator and licensee of a radio station serving the vicinity of Bowling Green, Ohio. Defendant telephone company provides service to northwest Ohio, including the Bowling Green area. The complaint sets forth eight causes of action, all of which arise out of defendant's alleged refusal or failure to give telephone and wire service to plaintiff. No claim is made for overcharges.

The Court obtains jurisdiction of this matter by virtue of 28 U.S.C. § 1337 and 47 U.S.C. § 207. Ward v. Northern Ohio Telephone Co., 300 F.2d 816 (6th Cir.), cert. den., 371 U.S. 820, 83 S.Ct. 37, 9 L. Ed.2d 61 (1962). Defendant's contention that the period of limitations has run will be given first consideration.

## I.

█ The claim that plaintiff's action is barred by the statute of limitations is ripe for disposition by summary judgment. There exists no question of fact; all of plaintiff's claims arose more than a year prior to the commencement of this suit. And with the possible exception of the first cause of action, all accrued within six years of commencement. It therefore becomes necessary to determine whether a federal one year limitation applies, as asserted by defendant, or, as urged by plaintiff, the six year Ohio provision prevails.

The Federal Communications Act was enacted in 1934.[1] One might expect that in the ensuing years some court would have had occasion to determine whether that act provides a statute of limitations applicable to civil actions brought against carriers for damages not based on overcharges. Yet no reported opinion has been found which considers the question.

Section 207 of Title 47, U.S.C., gives "[a]ny person claiming to be damaged by any common carrier" the option to proceed either before the Federal Communications Commission or a "district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies."

Section 415 is entitled "Limitations of actions" and provides in part as follows:

"(a) All actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within one year from the time the cause of action accrues, and not after.

"(b) All complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within one year from the time the cause of action accrues, and not after, subject to subsection (d) of this section.

"(c) For recovery of overcharges action at law shall be begun or complaint filed with the Commission against carriers within one year from the time the cause of action accrues, and not after, subject to subsection (d) of this section, except that if claim for the overcharge has been presented in writing to the carrier within the one-year period of limitation said period shall be extended to include one year from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice.

"(d) If on or before expiration of the period of limitation in subsection (b) or (c) of this section a carrier begins action under subsection (a) of this section for recovery of lawful charges in respect of the same service, or, without beginning action, collects charges in respect of that service, said

---

1. 48 Stat. 1064 (1934), as amended, 47 U.S.C. §§ 151–609 (1964).

period of limitation shall be extended to include ninety days from the time such action is begun or such charges are collected by the carrier."

An overall examination of section 415 reveals a variation in diction from subsection to subsection. Subsection (a) limits "actions at law" brought by carriers. Subsection (b) bars complaints "filed with the Commission," if brought outside the one year limit. Subsection (c) refers to *both* actions at law and complaints filed with the Commission for the recovery of overcharges. Only section 415 (b) has any relevance to the present suit, for this is neither an action by a carrier, § 415(a), nor an action for the recovery of overcharges, § 415(c). But, as previously stated section 415(b) only purports to bar complaints filed with the Commission. And since the Communications Act contains no other provision which would reach claims filed in district courts for damages not based on overcharges it seems inevitably to follow that the state statute of limitations must govern.[2] For reasons that will soon appear, however, the Court is required to look beyond the language of section 415.

At the time of the enactment of the Communications Act of 1934 the Interstate Commerce Act contained a "Limitations of actions" provision substantially the same as that of the former legislation. Specifically, section 16(3) (b) of the Interstate Commerce Act reads today as follows:

"(b) All complaints against carriers subject to this chapter for the recovery of damages not based on overcharges shall be filed with the commission within two years from the time the cause of action accrues, and not after, subject to subdivision (d) of this paragraph." 49 U.S.C. § 16(3)· (b).

Clearly, the language is the same as section 415(b), the only variation occurring in the time limitation.

At this point the relevant inquiry is twofold: (1) what was the understood meaning of section 16(3) (b) of the Interstate Commerce Act at the time that language was copied into the Communications Act of 1934; and (2) did Congress intend to adopt that meaning?

Such an inquiry requires a plunge into what seems ancient history. Initially, the Interstate Commerce Act provided no limitations in time for the commencement of proceedings before either the Commission or the district court. In 1906 section 16 of that act was amended to read in part as follows:

"Sec. 16. That if, after hearing a complaint made as provided in section 13 of this Act, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this Act for a violation thereof, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named.

"If a carrier does not comply * * * the complainant * * * may file in the circuit court [a petition for enforcement]. * * * *All complaints*

**2.** To the Court, the statutory language appears clear and unambiguous and is thus susceptible of but one construction. Moreover, a literal reading does not give rise to absurd or futile consequences. There is thus present the classic circumstances for the invocation of that common and oft-attacked canon of statutory interpretation, the plain meaning rule. Yet to do so here would be an evasion of the Court's duty to ascertain by all means available the proper meaning of the statutory language. Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955); United States

v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Takao Ozawa v. United States, 260 U.S. 178, 43 S.Ct. 65, 67 L.Ed. 199 (1922). In the words of Justice Frankfurter: "The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification. * * * A statute, like other living organisms, derives significance and sustenance from its environment, from which it cannot be severed without being mutilated." United States v. Monia, 317 U.S. 424, 431–432, 63 S.Ct. 409, 412–413, 87 L.Ed. 376 (1943) (dissenting opinion).

*for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after,* and a petition for the enforcement of an order for the payment of money shall be filed in the circuit court within one year from the date of the order, and not after * *." Act of June 29, 1906, ch. 3591, § 5, 34 Stat. 584, 590.

It should be noted at this point that the statute made no distinction between actions for overcharges and actions for reparation, nor is there any explicit limitation on original "actions at law". With justification, carriers governed by the Interstate Commerce Act assumed that section 16 applied only to administrative proceedings and therefore state law determined the limits on actions brought against them for overcharges and other damages.[3]

However, in 1915 the United States Supreme Court construed the above italicized language of section 16 as barring a suit for overcharges brought more than four years after plaintiff's cause of action arose. A. J. Phillips Co. v. Grand Trunk W. Ry., 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1915). The phrase "and not after" as used in the statute, coupled with "the requirements of uniformity which * * * must be borne in mind in construing the commerce act," were deemed to sustain the view that the lapse of time not only barred the remedy, but destroyed the liability. Id. at 667, 35 S. Ct. at 446.

Any doubts regarding the holding of the *Phillips* decision were laid to rest in

1923 in Kansas City So. Ry. v. Wolf, 261 U.S. 133, 43 S.Ct. 259, 67 L.Ed. 571 (1923), when the Court reaffirmed the *Phillips* construction in curt fashion.[4]

Since our purpose here is to ascertain the state of the law in 1934 as best we can, statutory modifications made after 1906 must also be taken into account. In 1920 an amendment divided section 16 into subsections; all limitations on actions were gathered in subsection (3) which read in part as follows:

> "(3) All actions at law by carriers subject to this Act for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after. All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after, unless the carrier, after the expiration of such two years or within ninety days before such expiration, begins an action for recovery of charges in respect of the same service, in which case such period of two years shall be extended to and including ninety days from the time such action by the carrier is begun." Transportation Act of 1920, ch. 91, § 424, 41 Stat. 456, 491–92.

This modification, although noted in the *Wolf* decision, was not considered by the Court since *Wolf* had arisen prior to the amendment. It might also be noted that the term "actions at law" made its first appearance in the 1920 amendment.

In 1924 Congress cast section 16(3) into the form it holds today.[5] The first

---

3. See H.R.Rep. No. 796, 68th Cong., 1st Sess. (1924).

4. Plaintiff reduced the question before the Court to its ultimate terms when it posed its argument in the following language:
 "If the construction which the defendant places on the statute is to prevail, the Court must either read out of § 16 the words 'with the Commission,' or must read into it words which extend its meaning to suits instituted originally in the District Court." 261 U.S. at 134, 43 S.Ct. 259.

5. Section 16(3) provided in part:
 "(3) (a) All actions at law by carriers subject to this Act for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after.
 "(b) All complaints against carriers subject to this Act for the recovery of damages not based on overcharges shall be filed with the commission within two years from the time the cause of action accrues, and not after, subject to subdivision (d).

sentence of old section 16(3) with its three year limitation became subdivision (a). The critical portion of the second sentence which had been construed in *Phillips* and *Wolf*, with the addition of the phrase "not based on overcharges," became subdivision (b). The two year limit was retained. Subdivision (c) was newly fashioned to complete the dichotomy initiated in (b) by providing a three year limit on proceedings for overcharges.

The reports of the House[6] and Senate[7] committees show clearly that the 1924 modifications were made in the face of the *Wolf* decision. Because the Supreme Court decision was "a great surprise to all the shippers and most of the carriers"[8] Congress enacted a savings clause[9] to revive claims barred by that decision and provided a three year limitation on actions for overcharges in order to equalize the time available to shippers (§ 16(3) (c)) and carriers (§ 16(3) (a)). Nowhere is there a hint that Congress intended to overturn the *Wolf* decision. On the contrary the use of the same form and limitation in section 16(3) (b) demonstrates convincingly that Congress acquiesced in the Supreme Court's construction of that language.

To summarize at this point: it appears to the Court that the meaning of section 16(3) (b) of the Interstate Commerce Act was reasonably clear in 1924, and thus in 1934; that meaning was simply that actions for damages not based on overcharges, whether filed with the com-

mission or with the district court, were subject to the two year limitation.

The inquiry now shifts to the enactment of the Communications Act of 1934 and the effect which must be ascribed to the adoption of the language of the Interstate Commerce Act.

■ Many courts have applied the rule of construction that when particular words, phrases or provisions of a statute have been the subject of judicial construction, the later adoption of that language by Congress is a strong indication of an intent to adopt the construction as well as the language of the former enactment. Overstreet v. North Shore Corp., 318 U.S. 125, 131–132, 63 S.Ct. 494, 87 L.Ed. 656 (1943); Latimer v. United States, 223 U.S. 501, 504, 32 S.Ct. 242, 56 L.Ed. 626 (1912); New York Credit Men's Adjustment Bureau, Inc. v. A. Jesse Goldstein & Co., 276 F.2d 886, 888–889 (2d Cir. 1960). And when it is the Supreme Court which has rendered the interpretation there is a more compelling reason for assuming congressional awareness of the statute's construction. Shapiro v. United States, 335 U.S. 1, 16, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); Hecht v. Malley, 265 U.S. 144, 153, 44 S.Ct. 462, 68 L.Ed. 949 (1924). In addition in the present case there exists a legislative history which clearly demonstrates that Congress knew that many provisions of the Communications Act were borrowed from an existing and judicially construed regulatory act. This is best illustrated by the following quota-

---

"(c) For recovery of overcharges action at law shall be begun or complaint filed with the commission against carriers subject to this Act within three years from the time the cause of action accrues, and not after, subject to subdivision (d), except that if claim for the overcharge has been presented in writing to the carrier within the three-year period of limitation said period shall be extended to include six months from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice." Act of June 7, 1924, ch. 325, 43 Stat. 633.

In 1940 the three year provisions of subdivisions (a) and (c) were changed to two years. Transportation Act of 1940, ch. 722, § 11, 54 Stat. 898, 912–913.

6. H.R.Rep. No. 796, 68th Cong., 1st Sess. (1924).

7. S.Rep. No. 286, 68th Cong., 1st Sess. (1924).

8. H.R.Rep. No. 796, 68th Cong., 1st Sess. 2 (1924).

9. Section 16(3) (h) revived all claims which accrued on or after March 1, 1920 and were filed prior to enactment or within 90 days of enactment. 43 Stat. 633.

tion from the report of the Senate Committee on Interstate Commerce:

"In this bill many provisions are copied verbatim from the Interstate Commerce Act because they apply directly to communication companies doing a common carrier business, but in some paragraphs the language is simplified and clarified. These variances or departures from the text of the Interstate Commerce Act are made for the purpose of clarification in their application to communications, rather than as a manifestation of congressional intent to attain a different objective." S.Rep. No. 781, 73d Cong., 2d Sess. 2 (1934).

Moreover, the reports of the committees of both houses of Congress refer specifically to the identity of section 16(3) of the existing act and section 415 of the new legislation.[10] Finally, it might be added that the same House and Senate committees had charge of both the 1924 bill [11] amending the Interstate Commerce Act and the bill [12] which eventually became the Communications Act of 1934.

In the face of this overwhelming evidence of congressional purpose plaintiff earnestly contends that Congress did not intend that section 415(b) be read to cover civil proceedings. Numerous examples of New Deal legislation wherein a uniform statute of limitations was not thought necessary are cited. For instance, the Natural Gas Act of 1938 (establishing the Federal Power Commission) does not provide a limitation on actions for damages. McClellan v. Montana-Dakota Utilities Co., 204 F.2d 166, 168 (8th Cir. 1953). The Fair Labor Standards Act of 1938 originally provided no statute of limitations. Klotz v. Ippolito, 40 F.Supp. 422, 426 (S.D.Tex. 1941). The Securities Exchange Act fixes periods of limitation for civil actions brought for violations of certain

sections, but not for others. Connelly v. Balkwill, 174 F.Supp. 49, 63 (N.D.Ohio 1959).

 While the foregoing indicates that Congress has treated the question of a uniform statute of limitations in various ways at different times, it casts no particular light on the immediate problem of ascertaining congressional purpose with regard to the Communications Act. For the reasons previously stated the Court holds that section 415(b) bars claims not based on overcharges filed in district court more than one year after their accrual.

II.

With respect to defendant's contention that the plaintiff is not the real party in interest, a decision is perhaps not necessary, since the Court has come to the conclusion that defendant's motion for a summary judgment should be granted on the basis that plaintiff's claims are barred by the statute of limitations. However, it seems advisable to give consideration to this second matter also, in order not to leave any loose ends dangling.

In this part of its motion, defendant contends that in November, 1955, the plaintiff conveyed and assigned all of the assets of the radio station involved in this controversy to an Ohio corporation, The Voice of Maumee Valley, Inc., in exchange for common shares of the corporation. Reference is made to defendant's exhibits 29, 30, 31, and 39, and various portions of the plaintiff's testimony given by deposition.

While there is perhaps no dispute about the facts shown by these exhibits, there is certainly considerable dispute as to the conclusions to be drawn from them.

The plaintiff points out that the assignments (exhibits 29 and 30) were as-

---

10. H.R.Rep. No. 1850, 73d Cong., 2d Sess. 8 (1934):

"Section 415 limits the time for recovery of unlawful charges or of undercharges. This section provides for shorter periods of limitation than are provided in sec-

tion 16(3) of the Interstate Commerce Act."

See also, S.Rep. No. 781, 73d Cong., 2d Sess. 11 (1934).

11. S. 2704, 68th Cong., 1st Sess. (1924).

12. S. 3285, 73d Cong., 2d Sess. (1934).

signments of all the assets owned by him and used in connection with the operation of Radio Station WWBG, but did not include the operating license, which was by law not assignable, and under which he remained personally responsible for the operation of the radio station; that the exhibits referred to show that plaintiff continued to be responsible for the operating losses of the station; and that none of the dealings or previous controversies and litigations with the defendant involved the corporation, but were either with the radio station under the identification of its call letters or with the plaintiff personally.

Under the circumstances, although it is perhaps arguable that the corporation, as an assignee of the plaintiff, is a proper, or even a necessary party to the litigation, it is obvious that the plaintiff at all times prior to the commencement of the litigation had real and substantial interests in the subjects of the various causes of action, and is therefore entitled to maintain this suit.

An order may be prepared by the defendant expressive of the conclusions expressed herein.