Jean SIMON, Plaintiff,

v.

Michel FRIBOURG, individually and as an officer of Continental Grain Company, Continental Grain Company, Conti-Commodity Services, Inc., Walter Goldschmidt, individually as an officer of Conti-Commodity Services, Inc., Defendants.

Civ. No. 4–86–259.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 20, 1986.

Curtin Mahoney & Cairns by Kenneth Corey-Edstrom, Minneapolis, Minn., for plaintiff.

Oppenheimer Wolff Foster Shepard & Donnelly by Darwin J. Lookingbill, Minneapolis, Minn., for defendants.

DIANA E. MURPHY, District Judge.

Plaintiff Jean Simon, a commodities broker, brought this action for damages against her former employer, Conti-Commodity Services, Inc. ("Conti"), its parent corporation, Continental Grain Co. (CGC), and two officers of the corporate defendants. Simon alleges violations of the Securities Exchange Act §§ 10(b) and 20(a), the Employment Retirement Income Security Act (ERISA), the Racketeer Influenced and Corrupt Organizations (RICO) Act, and a number of state laws. At the hearing, the court granted plaintiff's request to dismiss the ERISA claim against all defendants and the RICO claims against the corporate defendants. Now before the court is defendants' motion to dismiss the remaining federal claims for failure to state a cause of action and the state claims for lack of subject matter jurisdiction. Both plaintiff and defendants seek sanctions pursuant to Fed.R.Civ.P. 11.

*Background:*

For the purposes of this motion to dismiss, the court takes plaintiff's factual assertions as true. Plaintiff, a commodities broker, worked for Conti, a futures merchant and wholly-owned subsidiary of CGC, an agribusiness. Defendant Fribourg owns CGC; defendant Goldschmidt is Executive Vice President of CGC and Chairman of Conti. At a 1983 meeting of Conti brokers, Fribourg announced a "Share Plan" and promised that Conti would pay $1 million or 30% of its 1983 profits, whichever was greater, to a group of employees, including plaintiff. Conti would distribute this sum after considering each broker's productivity, length of service, and contribution to the company. Fribourg and Goldschmidt reiterated this promise on numerous occasions, in letters and in telephone conversations. Simon, who had other career opportunities, remained at Conti in reliance on the promised payment. She never received it, although she had eleven years tenure and was one of Conti's most productive brokers.

*Discussion:*

In passing upon a motion to dismiss for failure to state a claim, the court must read the complaint "in the light most favorable to the plaintiff" and determine whether it states any valid claim for relief." *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir.) (citations omitted), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). Dismissal is appropriate only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court must look beyond any inartful pleading and "examine the complaint to determine if the allegations provide for relief on any possible theory." *Garland,* 596 F.2d at 797.

### A. Securities Act Claims:

■ The statutory definition of a security is quite broad, embracing not only ordinary stocks and bonds, but "uncommon and irregular instruments." *Marine Bank v. Weaver,* 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982) (citations omitted). The securities statutes are not, however, "a broad federal remedy for all fraud," *id.,* and apply only to financial instruments that fall within the statutory definition.[1] There exists no single test by which the court can determine what is or is not a security. The Supreme Court has applied an "economic reality test" in deciding whether "an unusual instrument could be considered a 'security' if the circumstances of the transaction so dictated." *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 105 S.Ct. 2297, 2303, 85 L.Ed.2d 692 (1985) (citing *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)); *see also International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (applying *Howey* economic realities test to employee pension plan). However, a plaintiff need not satisfy the *Howey* test[2] where the

---

1. The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest of participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, pre-organization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine

months, exclusive of days of grace, or any renewal thereof the maturity is likewise limited.

Securities Exchange Act of 1934 § 3(a)(10); 15 U.S.C. § 78c(a)(10). Although the language of the Securities Act of 1933 differs, the definition is "essentially the same" under both Acts. *Marine Bank v. Weaver,* 455 U.S. 551. 555 n. 3, 102 S.Ct. 1220, 1223 n. 3, 71 L.Ed.2d 409 (citation omitted). The 1983 Act also speaks of a "certificate of interest or participation in any profit-sharing agreement." § 2(1), 15 U.S.C. § 77b(1).

2. The *Howey* test asks "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the

purported security is stock which possesses the characteristics traditionally associated with common stock. *Landreth*, 105 S.Ct. at 2303 (citing *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975)).

■ Defendants assert that *Howey* and *Daniel* control the instant case and that plaintiff's securities claims must fail because she has failed to identify a "security" entitling her to the protection of the Securities Acts. Plaintiff argues that *Landreth* precludes dismissal of her federal securities claims and that, even under the *Howey* test, she is entitled to proceed. For the reasons discussed below, the court concludes that plaintiff has failed to identify a security within the statutory definitions and that defendant is therefore entitled to dismissal of the securities claims.

*1. The Landreth Test*

It is questionable whether *Landreth*, which was explicitly limited to cases involving stock, should be extended to "certificate[s] of interest or participation in any profit-sharing agreement." The *Landreth* Court stressed attributes distinguishing stock from other categories of securities, noting that stock "represents to many people, both trained and untrained in business matters, the parading of a security," thus creating a high expectation of coverage under the Acts, and that it is "relatively

easy to identify because it lends itself to consistent definition." *Landreth*, 105 S.Ct. at 2306.[3] The Court expressly declined to decide whether "coverage of notes or other instruments may be proveable by their name and characteristics," and held "that 'stock' may be viewed as being in a category by itself for purposes of interpreting the scope of the Acts' definition of 'security.'" *Id.* At least one federal court has extended *Landreth* to a case not involving stock. *See Penturelli v. Spector, Cohen, Gadon & Rosen*, 779 F.2d 160 (3d Cir.1985). But the Third Circuit applied *Landreth* cautiously, only after concluding that the specific instruments at issue differed in no way from the common definition found in Supreme Court decisions and Professor Loss's work.[4] In the instant case, on the other hand, there is little authority to suggest that a "certificate of interest or participation in a profit-sharing agreement" is a term so commonly understood and an agreement so easy to identify that it should be "proveable by [its] name and characteristics." *Landreth*, 105 S.Ct. at 2306.[5]

Even the application of the *Landreth* test would not save plaintiff's federal securities claims. Plaintiff asserts that she should prevail under *Landreth* because the instant instrument[6] was a "profit-sharing plan," either because it was a "plan ... to share profits" or because it meets the Internal Revenue Code definition of a profit-sharing plan. A profit-sharing plan is not,

---

efforts in others." *Id.* 328 U.S. at 301, 66 S.Ct. at 1104.

**3.** It is one thing to say that the typical cooperative apartment dweller has bought a home, not a security; or that not every installment purchase 'note' is a security; or that a person who charges a restaurant meal by signing his credit card slip is not selling a security even though his signature is an 'evidence of indebtedness.' But *stock* ... is so quintessentially a security as to foreclose further analysis. L. Loss, *Fundamentals of Securities Regulation* 212 (1983) (emphasis added in original), cited with approval in *Landreth*, 105 S.Ct. at 2306.

**4.** *See SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943); Loss, supra note 3, at 184. There was also considerable authority indicating that courts had previously treated such interests as securi-

ties, *see Penturelli*, 779 F.2d at 166 n. 5, and the parties had treated the instruments as securities.

**5.** It is, perhaps, telling that Professor Loss treats stock and the "fractional individed interest[s] in oil, gas, or other mineral rights at issue in *Penturelli* as separate categories in his discussion of the reach of the Securities Acts. Loss treats certificates of interest or participation in profit-sharing agreements in his section on "Investment Contracts and Other 'Catchall Varieties.'" *See* 1 Loss, *Securities Regulation* 506 (2d ed. 1961).

**6.** The court assumes, for the purpose of this motion, that the defendants' promise to distribute certain sums gave rise to an "instrument." Plaintiff does not allege, however, the existence of any "instrument" in the common sense of that word.

however, a "certificate of interest or participation in a profit sharing agreement." "The classic example of a 'certificate of interest or participation in a profit sharing arrangement' is a contract whereby the buyer furnishes funds and the seller the skill for speculating in the stock or commodities markets under an arrangement to split any profits." 1 Loss, *supra* note 54, at 489. *Cf., Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) ("withdrawable capital shares," by which investors became members of state savings and loan and received dividends based upon the association's performance, could be viewed, inter alia, as certificates of interest or participation in profit-sharing agreement); *Lehigh Valley Trust Co. v. Central National Bank of Jacksonville,* 409 F.2d 989 (5th Cir.1969) (participation in loan was "certificate of interest of participation in profit-sharing agreement"). The instrument plaintiff describes does not meet this description, nor does it answer to the name of any of the other specific financial instruments enumerated in the Acts. "There is no specific reference in the Securities Act to employee pension or profit-sharing plans of any kind. . . ." 1 Loss, *supra* note 5, at 506. The transaction at issue here is, at best, an "uncommon or irregular instrument" subject to the *Howey* investment contract test.

## 2. The Howey Test

■ Non-contributory, compulsory pension plans are not investment contracts and therefore not securities under the Acts. *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (applying *Howey* test). The *Daniel* decision rested on three considerations. First, the employee failed to satisfy the *Howey* test. He had not "invested in the pension plan, but had agreed to work in return for a compensation package which included the pension plan. He did not give up "some tangible and definable consideration in return for an interest that had substantially the characteristics of a security." *Id.* at 560, 99 S.Ct. at 796.[7] Second, the legislative and administrative history of the Acts indicates that neither Congress nor the SEC treated non-contributory employee benefit plans as securities. *Id.* at 563–569, 99 S.Ct. at 798–801.[8] Finally, the enactment of the Employment Retirement Security Act (ERISA) undercut any arguments for extending Securities Acts protection to the noncontributory pension plans at issue. The third of the *Daniel* considerations is absent in the instant case, but the first two require a determination that the instrument now in question is not a security.

Plaintiff acknowledges that *Daniel* is a closely-related case, but unsuccessfully seeks to distinguish it and avoid its application here. First, she argues that profit-sharing plans, unlike pension plans, are specifically defined as securities, but the court has already rejected this argument in another form. *See* pp. 321–22 supra. Second, plaintiff asserts that she, unlike the *Daniel* plaintiff, satisfies the *Howey* test. Because Conti promised participation in a profit-sharing plan in order to keep its brokers, "each broker's decision to remain employed at Conti was an investment in the

---

7. [T]he purported investment is a relatively insignificant part of an employee's total and indivisible compensation package. No portion of an employee's compensation other than the potential pension benefits has any of the characteristics of a security, yet these non-investment interests cannot be segregated from the possible pension benefits. Only in the most abstract sense may it be said that an employee 'exchanges' some portion of his labor in return for these possible benefits. He surrenders his labor as a whole, and in return receives a compensation package that is substantially devoid of aspects resembling a security. . . . Looking at the economic realities, it seems clear that an em-

ployee is selling his labor primarily to obtain a livelihood, not to make an investment. *Id.*

8. *See, e.g., Interim Report of Activities of the Private Welfare and Pension Plan Study, 1971,* S.Rep. No. 92–6345, p. 96 (1972) ("pension and profit-sharing plans are exempt from coverage under the Securities Act ... unless the plan is a voluntary contributory pension plan and invests in the securities of the employer company an amount greater than that paid into the plan by the employer."), cited in *Daniel,* 439 U.S. at 568–69, 99 S.Ct. at 801.

Company rather than a mere continuation of employment." It may well be that Simon's decision to remain at Conti was motivated in part by the promise of profit-sharing. But other employees may choose to remain with employers because they seek promised pensions. In both cases, the employee trades work for a compensation package; the purported security is only a part of the package. Simon's case is not distinguishable from *Daniel* in this respect.[9] Plaintiff also fails to show that she anticipated earning a profit "solely through the efforts of others." Under Simon's own version of the facts, Conti was to distribute profits based on "the years of service of the employee, the amount of commissions earned during those years, and other services to the company."

Under any analysis plaintiff's federal securities claims should be dismissed for failure to identify a "security" and thus to state a cause of action.

## B. RICO Claims

"A violation of § 1962(c) [of RICO] requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiff asserts that she has satisfied each element of the claim; defendant persuasively argues that plaintiff cannot satisfy the "pattern" requirement.

"[P]roof of a 'pattern of racketeering activity' 'requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is the factor of *continuity plus relationship* which combines to produce a pattern.'" *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986) (emphasis in original) (quoting *Sedima*, 105 S.Ct. at 3275 n. 14). In *Superior Oil*, the plaintiff proved "several related acts of mail and wire fraud" in furtherance of a single crime—the conversion or theft of gas from plaintiff's pipe-

line. This satisfied the "relationship" prong of the *Sedima* test, but not the "continuity" prong. The failing in plaintiff's evidence was its inability to demonstrate that defendants had engaged in any other criminal activity. *Superior Oil*, 785 F.2d at 257.

■ *Superior Oil* is on all fours with the instant case. Here, as there, the plaintiff alleges a number of acts of mail and wire fraud, all committed in furtherance of a single criminal act. Here, plaintiff argues that defendants fraudulently promised their employees participation in a plan to share 1983 profits. She does not allege they concocted a similar scheme in any other year or that they were otherwise involved in any criminal activity. Under *Superior Oil* plaintiff has failed to show "continuity," and her RICO claims must fail.

## C. State Law Claims

■ Plaintiff requested dismissal of some of her federal claims, and the remaining federal claims are being dismissed. The only prior proceeding in this case has been a routine pretrial conference. Under all the circumstances, state law claims should be dismissed for lack of subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Koke v. Stifel, Nicolaus & Co.*, 620 F.2d 1340, 1346 (8th Cir. 1980).

## D. Cross Motions for Sanction

Both sides seek Fed.R.Civ.P. 11 sanctions. No party has persuaded the court that any other party or attorney has acted frivolously or in bad faith, and these motions for sanctions are inappropriate under the circumstances.

---

**9.** *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555 (2d Cir.1985) and *Collins v. Rukin*, 342 F.Supp. 1282, on which plaintiff relies, are inapposite. Both of those cases involved acquisitions of stock or stock options.

*See also Foltz v. U.S. News & World Report, Inc.*, 627 F.Supp. 1143 (D.D.C.1986) (employees' interests in profit-sharing plan were not 'securities,' but interests in stock bonus plan were).

ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Defendants' motion to dismiss counts 6, 7, 9, 10 and 11, which allege federal securities fraud and violations of RICO, is granted and those counts are dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

2. Defendants' motion to dismiss the remaining claims for lack of subject matter jurisdiction is granted and the remainder of the complaint is dismissed pursuant to Fed. R.Civ.P. 12(b)(1).

3. Defendants' motion for sanctions is denied.

4. Plaintiff's motion for sanctions is denied.