H.J. INC., a Minnesota corporation, Kirk Dahl, Larry Krugen and Mary Krugen, individually and d/b/a Photo Images, Susan Davis, Robert Neal, Isaac H. Ward, Richard L. Anderson, Thomas J. Mott, and all others similarly situated, Plaintiffs,

v.

NORTHWESTERN BELL TELEPHONE COMPANY, a subsidiary of U.S. West, A.B.C. individually and D.E.F. as corporations, and other unnamed Co-conspirators, Defendants.

Civ. No. 4–86–546.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 24, 1986.
Reconsideration Denied Feb. 18, 1987.

Mark Reinhardt, Susan Bedor, Reinhardt & Anderson, and John Cochrane, Cochrane & Bresnahan, St. Paul, Minn., for plaintiffs.

John D. French, John F. Beukema, James L. Volling, Joseph H. Otterstetter, Faegre & Benson, and Stephen T. Refsell, Gen. Atty., Northwestern Bell Telephone Co., Minneapolis, Minn., for defendants.

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant Northwestern Bell Telephone Company's motion to dismiss and/or for summary judgment, and on plaintiffs' motion to strike defenses. Plaintiffs' motion will be denied. Defendant's motion to dismiss will be granted.

FACTS

Plaintiff H.J., Inc. is a Minnesota corporation with its principal place of business in Burnsville, Minnesota. Plaintiffs Kirk Dahl, Mary Krugen, Larry Krugen, Susan Davis, Robert Neal, Isaac H. Ward, Richard L. Anderson, and Thomas J. Mott are each Minnesota residents. Each of the named plaintiffs has purchased telecommunications goods and services from Northwestern Bell. Defendant Northwestern Bell Telephone Co., a subsidiary of U.S. West, Inc., is a telecommunications concern supplying goods and services in interstate commerce. Defendants Harry Crump, Leo Adams, Barbara Beerhalter, Roger Hanson, and Juanita Satterlee are present or former members of the Minnesota Public Utilities Commission (MPUC). Defendant Robert Johnson is counsel for the Minnesota Telephone Association. Ray Lar-

son, Roy Weir, Thomas Madison, and Gene Bier are officers and/or employees of Northwestern Bell.

This is a class action arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Plaintiffs allege that defendants committed acts in violation of 18 U.S.C. §§ 1962(a), (b), and (c) and further allege that defendants conspired to commit racketeering acts in violation of 18 U.S.C. § 1962(d). Plaintiffs also bring state law claims pursuant to the Court's pendent jurisdiction, alleging acts of bribery in contravention of Minn.Stat. § 609.42, subd. 1(1) and (2) and the common law of bribery.

The gist of plaintiffs' cause of action is an allegation that Northwestern Bell, by and through its corporate agents, initiated a scheme designed to illegally influence various members of the MPUC, the regulatory body which sets rates which Northwestern Bell may charge for the goods and services which it provides. Plaintiffs allege that from July, 1980 and through the present, Northwestern Bell has offered, promised, or given, directly or indirectly, certain benefits, rewards, and consideration to duly appointed MPUC commissioners, with the intent to influence said commissioners with respect to the performance of their duties as officers of the MPUC. Amended Complaint ¶ 30. Specifically, plaintiffs allege the following corrupting acts:

(1) MPUC commissioner Hanson negotiated with Northwestern Bell officials including Gene Bier, Northwestern Bell's chief executive officer, regarding an offer of employment made to Hanson by Northwestern Bell in November, 1984, at a time when Hanson was still an MPUC commissioner. Amended Complaint ¶ 37.

(2) MPUC commissioner Hanson received illicit payments from Northwestern Bell of $30,000 during 1985. The illicit payments were made to Robert Johnson, counsel for the Minnesota Telephone Association, and passed on to Hanson. Amended Complaint ¶ 38. These illicit payments continued after Hanson was reappointed MPUC com-

missioner on November 25, 1985. Amended Complaint ¶ 39.

(3) Northwestern Bell executives Thomas Madison and Roy Weir made an offer of employment to MPUC commissioner Juanita Satterlee while Satterlee was still a commission member. Amended Complaint ¶ 40.

(4) Northwestern Bell made illicit payments to Satterlee of $106,129 during the period 1983–1984, while Satterlee was an MPUC commissioner. Amended Complaint ¶ 41.

(5) Northwestern Bell officer Larson provided MPUC commissioner Crump with a free plane ride from Oklahoma to Minneapolis on June 26, 1985. Amended Complaint ¶ 31.

(6) MPUC commissioners Crump and Beerhalter were provided with an all-expenses-paid excursion to Canterbury Downs in September, 1985, courtesy of Northwestern Bell. Amended Complaint ¶ 32, 36.

(7) MPUC commissioner Crump was provided with tickets to various Broadway plays by Northwestern Bell officials between 1984 and the present. Amended Complaint ¶ 33.

(8) MPUC commissioners Crump and Adams were provided with free tickets to various sporting events by Northwestern Bell officials during the period 1981 to the present. Amended Complaint ¶ 34, 35.

(9) During the period July, 1980 to the present, Northwestern Bell has expended thousands of dollars for various gifts, emoluments, meals, and parties for MPUC commissioners. Amended Complaint ¶ 42.

Plaintiffs' complaint is in five counts. Count I is a state law claim alleging that the defendants bribed MPUC commissioners by offering to those commissioners benefits, rewards, and consideration to which they were not entitled. Plaintiffs seek civil recovery based on violation of the Minnesota criminal bribery statute, Minn. Stat. § 609.42, subd. 1(1) and (2), and for common law bribery. Count II is a RICO claim

arising under section 1962(a). Count III arises under RICO section 1962(b), alleging that the defendants associated with the MPUC in unlawful racketeering activity. Count IV arises under RICO section 1962(c) and Count V is a conspiracy count arising under RICO section 1962(d). Each of the RICO counts involves an allegation that the defendants and the MPUC associated together for the purpose of unlawful racketeering activity.

Plaintiffs seek to recover compensatory damages, measured by the amount received by Northwestern Bell in excess of what would have been a fair and reasonable charge for telephone services. Plaintiffs also seek to recover punitive damages, treble damages pursuant to RICO, 18 U.S.C. § 1962(c), and an injunction prohibiting defendants from engaging in further unlawful activity.[1]

Defendant Northwestern Bell now brings this motion to dismiss and/or for summary judgment. Plaintiffs have filed a countermotion to strike defenses.

## DISCUSSION

### A. *Timeliness*

As a threshold matter, plaintiffs argue that defendant's Rule 12(b)(6) motion to dismiss is untimely. Defendant's motion was filed after defendant's answer to plaintiffs' amended complaint. Rule 12(b)(6) provides that a motion to dismiss for failure to state a claim upon which relief can be granted shall be made *"before* [responsive] pleading if a further pleading is permitted."* Fed.R.Civ.P. 12(b)(6) (emphasis added). Rule 12 gives the defendant the option of raising a defense by motion or by the pleadings, however. Courts have discretion to allow 12(b)(6) motions if the defense has been previously included in the answer. 5 C.Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1361 at 643 n. 35. Here, defendant raised its de-

fenses in its answer. In the exercise of the Court's discretion the defendant will be permitted to bring a Rule 12(b)(6) motion at this time.

### B. *Motion to Strike Defenses*

Plaintiffs have brought a motion to strike defendants' third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh, and twelfth defenses. Plaintiffs' motion is brought pursuant to Fed.R.Civ.P. 12(f) which provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f). A Rule 12(f) motion to strike defenses is a drastic remedy which is disfavored by the courts and is infrequently granted. *Vernon J. Rockler & Co. v. Minneapolis Shareholders Co.*, 69 F.R.D. 1, 5 (D.Minn.1975). A Rule 12(f) motion to strike will be granted only where the Court is convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed. *Carter-Wallace, Inc. v. Riverton Laboratories, Inc.*, 47 F.R.D. 366, 368 (S.D.N.Y. 1969).

Plaintiffs have failed to show that the "drastic remedy" of striking defendants' defenses is appropriate in the case at bar. Each of the challenged defenses is facially valid. Accordingly, plaintiffs' Rule 12(f) motion to strike defenses will be denied.

---

1. The Court was pleased to note that on November 7, 1986 the MPUC voted to reconsider a $57.5 million rate increase granted to Northwestern Bell in 1984. As the Court noted at oral argument, the Commission appears to be an appropriate place to consider whether the alleged briberies and other improper contacts had any effect upon the rate increases granted to Northwestern Bell by the MPUC. The MPUC's decision to reopen the case means that the rate differentiations of which plaintiffs complain could be corrected by an MPUC decision to abrogate the 1984 rate increases. Minneapolis Star & Tribune, November 8, 1986, at 1, col. 4.

## C. RICO

In order to establish a RICO cause of action plaintiffs must prove the existence of four elements:

(1) conduct

(2) of an enterprise

(3) through a pattern

(4) of racketeering activity.

*See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted); *Simon v. Fribourg,* 650 F.Supp. 319, 323 (D.Minn. 1986). Defendant moves to dismiss plaintiffs' RICO claim on the ground that plaintiffs have failed to allege a "pattern" of racketeering activity.

### 1. *"Pattern" of Racketeering Activity*

An essential element of the RICO civil cause of action is proof that defendants have engaged in a "pattern" of racketeering activity. The "pattern" requirement was subjected to a searching analysis in the Supreme Court's *Sedima* decision. The *Sedima* Court enunciated the following guiding principles:

(1) two isolated acts of racketeering activity do not constitute a pattern;

(2) it is the factors of *continuity plus relationship* which combine to produce a pattern;

(3) the "pattern" element of the statute was designed to limit RICO's application to planned, ongoing, continuing crime as opposed to sporadic, unrelated, isolated criminal episodes.

*See Sedima,* 105 S.Ct. at 3285 n. 14.[2]

The United States Court of Appeals for the Eighth Circuit has explored the meaning of "pattern" in a civil RICO context in two recent cases, *Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986) and *Holmberg v. Morrisette,* 800 F.2d 205 (8th Cir., 1986). In *Superior Oil,* the plaintiff proved several related acts of mail and wire fraud in furtherance of a single crime—the conversion or theft of gas from plaintiff's pipeline. The Eighth Circuit found that plaintiff had satisfied the "relationship" prong of the *Sedima* test, but not the "continuity" prong. The Eighth Circuit explained that proof of a "pattern" of racketeering activity requires more than proof of one racketeering activity and the threat of continuing activity. It is the factor of "continuity plus relationship" which combines to produce a pattern. The court found that proof of a single fraudulent scheme, implemented by several fraudulent acts, does not constitute a "pattern" of racketeering activity for RICO purposes. While the "relationship" prong of the pattern test is met by proof of several related acts of mail and wire fraud, in the absence

---

**2.** The *Sedima* Court made the following observations:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it *"means"* two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p 158 (1969) (em-

phasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). *See also id.,* at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e) 18 USCS § 3575(e). This language may be useful in interpreting other sections of the Act. *Sedima,* 105 S.Ct. at 3285 n. 14.

of proof that the defendants "had ever done these activities in the past ... [or] that they were engaged in other criminal activities elsewhere," *Superior Oil*, 785 F.2d at 257, it could not be said that plaintiffs had proved "continuity" sufficient to establish their RICO claims. The court concluded:

> [Plaintiff] has, however, failed to prove the "continuity" sufficient to form a "pattern of racketeering activity." The actions of [defendants] comprised one continuing scheme to convert gas from [plaintiff's] pipeline.... On the facts of this case, we agree with the court's conclusion in *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 832 (D.C.Ill.1985), that "[i]t is difficult to see how the threat of continuing activity stressed in the Senate Report could be established by a single criminal episode. * * * It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Superior Oil*, 785 F.2d at 257 (footnote omitted).

In *Holmberg*[3] plaintiff offered proof of several acts of wire or mail fraud related to a common purpose or scheme. The Eighth Circuit found that plaintiff had satisfied the "relationship" prong of *Sedima*. As in *Superior Oil*, however, the Court found that plaintiff had not satisfied the "continu-

ity" prong. Because defendants' acts of wire and mail fraud were undertaken as part of a common purpose or scheme, there was no showing of continuity, notwithstanding that the single fraudulent effort was implemented by several acts of wire or mail fraud. The court stated: "[t]here was no evidence that [the defendants] had engaged in like activities in the past or that they were engaged in other criminal activities." *Holmberg*, 800 F.2d at 210. In the absence of proof of like past or other present fraudulent activity, plaintiffs' civil RICO cause of action was dismissed.

■■■ Distilled to their essence, *Sedima*, *Superior Oil*, and *Holmberg* give rise to the following governing principles. In order to establish a "pattern" of racketeering activity plaintiffs must allege and prove (1) relationship, and (2) continuity. The relationship prong is satisfied by proof of several related acts in furtherance of a single criminal scheme. *Superior Oil*, 785 F.2d at 257; *Louisiana Power and Light Co. v. United Gas Pipe Line Co.*, 642 F.Supp. 781, 808 (E.D.La.1986); *Frankart Distributors, Inc. v. RMR Advertising, Inc.*, 632 F.Supp. 1198 (S.D.N.Y.1986); *Simon*, slip op. at 10. The continuity prong is satisfied by proof that the defendants have committed the same or similar racketeering activities in the past or are engaged in other criminal activities elsewhere. *Superior Oil*, 785 F.2d at 257; *Holmberg*, 800 F.2d at 210–11.[4]

---

**3.** In *Holmberg* the Eighth Circuit cited definitions of "pattern" drawn from the Omnibus Crime Control Act of 1970, 18 U.S.C. § 3575(e), wherein Congress provided that "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." The *Holmberg* court also looked to legislative history for guidance, citing the following definition of "pattern" drawn from Senate reports:

> The concept of "pattern" is essential to the operation of the statute.... The target of [RICO] is ... not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of continuity plus

relationship which combines to produce a pattern.

*Holmberg*, 800 F.2d at 210, quoting S.Rep.No. 617, 91st Cong. 2d Sess. 158 (1969).

**4.** *See, e.g., Simon v. Fribourg*, 650 F.Supp. 319, 323 (D.Minn.1986) wherein the court declared:

> "[P]roof of a 'pattern of racketeering activity' 'requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is the factor of *continuity plus relationship* which combines to produce a pattern.'" *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986) (emphasis in original) (quoting *Sedima*, 105 S.Ct. at 3275 n. 14). In *Superior Oil*, the plaintiff proved "several related acts of mail and wire fraud" in furtherance of a single crime—the conversion or

■ Applying these principles to the case at bar, it is clear that plaintiffs have satisfied the first prong of the *Sedima* "pattern" test. Plaintiffs have alleged a "relationship" among and between the predicate acts of racketeering allegedly committed by defendants. Quite clearly, the acts allegedly committed by defendants—the alleged illicit distribution of tickets and other amenities to MPUC commissioners during the period 1981 to the present; uncompensated plane rides and excursions to Canterbury Downs during the same period; alleged illicit payments and promises of employment to MPUC commissioners Hanson and Satterlee—were related acts in furtherance of a single alleged criminal scheme, *i.e.*, all were designed to influence MPUC commissioners on behalf of Northwestern Bell.

As to the "continuity" prong of the *Sedima* test, however, plaintiffs' cause of action is much more problematical. While plaintiffs have alleged the existence of several fraudulent acts, each of these acts was committed in furtherance of a *single fraudulent scheme*. Here, as in *Superior Oil, Holmberg,* and *Simon,* there simply are no allegations that the defendants have engaged in "like activities in the past" or that defendants are engaged in "other criminal activities" elsewhere. *Superior Oil,* 785 F.2d at 257; *Holmberg,* 800 F.2d at 211; *Simon,* 650 F.Supp. at 323. The *Superior Oil-Holmberg* construction of the *Sedima* "pattern" test is extremely restrictive—in order to establish a pattern of racketeering activity plaintiffs must allege and prove multiple illegal schemes, of which the case at bar presents a separable episode. Each of the fraudulent acts alleged by plaintiffs was committed in furtherance of a single scheme to influence MPUC commissioners to the detriment of Northwestern Bell's ratepayers. Plaintiffs do not allege that the defendants have engaged in like wrongful activity in the past or are engaged in other wrongful activity elsewhere. *See Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828, 832 (N.D.Ill.1985) (the common sense interpretation of "pattern" implies acts occurring in different criminal episodes, episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity). Absent allegations of separable criminal episodes, plaintiffs' cause of action simply does not fit the RICO paradigm—the infiltration of legitimate business by criminal conduct which embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. It is apparent that plaintiffs have attempted to splinter a series of related acts into a civil RICO cause of action. *Professional Assets Management, Inc. v. Penn Square Bank, N.A.,* 616 F.Supp. 1418, 1423 (W.D.Okla.1985). As such, plaintiffs' allegations fall short of establishing a "pattern" within the meaning of the RICO statute. Here, as in *Superior Oil* and *Holmberg,* "[i]t places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'" *Superior Oil,* 785 F.2d at 257; *Holmberg,* 800 F.2d at 211. *See, e.g., Allington v. Carpenter,* 619 F.Supp. 474 (C.D. Cal.1985) (three acts of wire fraud in connection with a single isolated fraudulent scheme comprised a single criminal episode rather than a "pattern" of racketeering

theft of gas from plaintiff's pipeline. This satisfied the "relationship" prong of the *Sedima* test, but not the "continuity" prong. The failing in plaintiff's evidence was its inability to demonstrate that defendants had engaged in any other criminal activity. *Superior Oil,* 785 F.2d at 257.

*Simon,* 650 F.Supp. at 323. In *Simon* the court found that plaintiff had failed to allege a civil

RICO claim because the racketeering acts alleged by plaintiff were "all committed in furtherance of a single criminal act." *Simon,* 650 F.Supp. at 323. In the absence of proof that the defendants had "concocted a similar scheme in any other year or that they were otherwise involved in any criminal activity" plaintiff's RICO claims must fail, the court found. *Simon,* 650 F.Supp. at 323.

activity); *Morgan v. Bank of Waukegan,* 615 F.Supp. 836, 838 (N.D.Ill.1985) (single plot spread over several years does not satisfy the pattern requirement); *Cullen v. Nassau County Republican Committee,* II RICO Law Rptr. 564 (E.D.N.Y.1985) (to establish pattern plaintiffs must show that crimes constituted part of a larger pattern of criminal activity); *Exeter Towers Associates v. Bowditch,* 604 F.Supp. 1547 (D.Mass.1985) (two acts of mail fraud in connection with the purchase of a single mortgage does not constitute a pattern); *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6 (W.D.Pa.1981) (multiple bribes received by councilman at a political fundraiser did not constitute a pattern).

Plaintiffs cite various decisions of other courts in other circuits where proof of various predicate acts engaged in over a significant period of time has been held to satisfy the "pattern" requirement of civil RICO.[5] *See Illinois Dept. of Revenue v. Phillips,* 771 F.2d 312, 313 (7th Cir.1985) (defendants' act of mailing nine fraudulent tax returns over a nine-month period constitutes pattern of racketeering); *First Federal Savings and Loan Association of Pittsburgh v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 445 (S.D.N.Y.1986) (predicate mail fraud acts arising out of a single scheme constitute pattern); *Papagiannis v. Pontikis,* 108 F.R.D. 177 (N.D.Ill. 1985) (perpetration of fraud on more than one victim constitutes pattern); *United States v. Freshie Co.,* 639 F.Supp. 442

(E.D.Pa.1986) (related but distinct methods of criminal activity engaged in over a substantial period of time rose to the level of a pattern of racketeering activity). Were the Court writing on a clean slate, these cases might well be persuasive. In the Eighth Circuit, however, the slate is far from clean.[6] *Superior Oil* and *Holmberg* are on all fours with the instant case. Under *Superior Oil* and *Holmberg,* plaintiffs have failed to show the requisite "continuity." Accordingly, plaintiffs' RICO claims must be dismissed.

Although plaintiffs' failure to satisfy the continuity prong of the *Sedima* pattern test is fully dispositive of plaintiffs' RICO claims, in the interest of thoroughness, certain of defendant's remaining arguments for dismissal will be briefly addressed.

### 2. *Enterprise-Person Distinction*

RICO was passed as part of the Organized Crime Control Act. *United States v. Hartley,* 678 F.2d 961, 987 (11th Cir.1982). Its primary purpose was "to eradicate organized crime and corruption." *United States v. Lee Stroller Enterprises, Inc.,* 652 F.2d 1313, 1317 (7th Cir.1981). In *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the United States Supreme Court interpreted RICO as requiring proof of an "enterprise" engaged in a "pattern of racketeering activity." 452 U.S. at 583, 101 S.Ct. at 2528. "Enterprise" as defined in 18 U.S.C. § 1961(4) "includes any partnership, corpo-

---

**5.** In a recent decision, *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986), the United States Court of Appeals for the Seventh Circuit noted that the "continuity" aspect of the pattern requirement in the aftermath of *Sedima* footnote 14 has created a conflict among the circuits. The Eleventh Circuit has rejected the proposition that the predicate acts must occur in different criminal episodes or schemes, *Bank of America v. Touche Ross & Co.,* 782 F.2d 966 (11th Cir.1986), while in contrast the Eighth Circuit has held that where all predicate acts were committed in furtherance of a single scheme the continuity requirement has not been met, as discussed above. In *Morgan* the Seventh Circuit elected to steer the middle ground, holding that "[i]n order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over

an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.,* 'transactions' somewhat separated in time and place." ...

**6.** One court has identified three positions which the courts have taken in construing the continuity and relationship test. At one extreme, plaintiff is required to prove that the defendant was engaged in multiple illegal schemes. This is the position taken by the Eighth Circuit in *Superior Oil* and *Holmberg.* At the other extreme, courts have held that allegations of two related predicate acts is sufficient. An intermediate position taken by some courts requires proof of multiple criminal episodes evincing an ongoing practice or activity. *See Louisiana Power and Light,* 642 F.Supp. at 808–09.

ration, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity." Under *Turkette*, the existence of such an enterprise must be established by "evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528. Moreover, the enterprise must be shown to have an existence "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528; *Bennet v. E.F. Hutton, Inc.*, 597 F.Supp. 1547, 1559 (N.D.Ohio 1984).

Defendant moves for dismissal of plaintiffs' Count II on the ground that Count II names Northwestern Bell as both the "person" and the "enterprise" for purposes of plaintiffs' section 1962(a) claim. Defendant argues that Northwestern Bell cannot be both the "person" and the "enterprise" and that Count II is thus fatally defective.

 RICO proscribes conduct in which one party, the "person" subject to the statute, acts upon an entity, the "enterprise," in such a manner that the enterprise's affairs are conducted through a pattern of racketeering. *Bennett v. Berg*, 685 F.2d 1053, 1061 (8th Cir.1982). While some courts have held that a legal entity or formal enterprise which has actively participated and benefited from a pattern of racketeering activity can be named as *both* the enterprise and the person, *see United States v. Hartley*, 678 F.2d 961 (11th Cir. 1982), the majority position, and the one adopted in this circuit and district, is that the RICO "enterprise" cannot also be the RICO "person." *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982). In *Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982), the Eighth Circuit dismissed one count of plaintiff's complaint for failure to draw a distinction between the RICO enterprise and the RICO person. The *Bennett* ruling was reaffirmed in *Alexander Grant & Co. v. Tiffany Industries, Inc.*, 742 F.2d 408, 411 n. 6 (8th Cir.1984), *vacated on other grounds and remanded for reconsideration in light of Sedima*, —— U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985), *on remand* 770 F.2d 717 (1985), where the court stated:

> We do observe that [plaintiff's] original complaint alleges that [defendant] is both a "person" and an "enterprise" within the meaning of section 1962(c). It was precisely because of the possibility of such an identity that we held that count II of the complaint in *Bennett v. Berg* [citation omitted] failed to state a claim.

In *Minnesota Odd Fellows Home Foundation v. Engler & Budd Co.*, 630 F.Supp. 797 (D.Minn.1986), the court found that "in the Eighth Circuit, it is necessary to allege an 'enterprise' separate from the 'person' who allegedly associates with the enterprise." *Odd Fellows*, 630 F.Supp. at 800, *citing Bennett v. Berg*, 685 F.2d at 1089. Because plaintiff in that case had failed to allege the existence of an "enterprise" separate and distinct from the "person" associated with the enterprise, the court dismissed plaintiff's RICO claims.

Plaintiffs' Count II alleges:

> 48. Northwestern Bell Telephone Company is a person within the meaning of 18 U.S.C. 1961(3).
>
> 49. The person referred to in paragraph 48 is also an ongoing enterprise within the meaning of 18 U.S.C. 1961(4).

Amended Complaint ¶¶ 48, 49. Quite clearly, plaintiffs have failed to allege a RICO "enterprise" separate and distinct from a RICO "person." Plaintiffs argue, however, that *Bennett* is not controlling in that the *Bennett* plaintiff's cause of action arose under section 1962(c) of RICO, whereas plaintiffs' Count II arises under section 1962(a). Some courts have held that in actions arising under section 1962(a) the enterprise and the person need not be distinct. *See, e.g., B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628 (3d Cir.1984); *United States v. Freshie Co.*, 639 F.Supp. 442 (E.D.Pa.1986). Other courts have held that the person-enterprise distinction pertains to 1962(a) actions as well as 1962(c) actions. *See, e.g., Kredietbank, N.V. v. Joyce Morris, Inc.*, CIVIL No. 84–1903

(D.N.J. Jan. 9, 1986) [Available on WEST-LAW, DCTU database]; *Rush v. Oppenheimer & Co.*, 628 F.Supp. 1188, 1196–98 (S.D. N.Y.1985); *Computer Sciences*, 689 F.2d at 1190. The Court finds that in a 1962(a) action, as in a 1962(c) action, plaintiff must allege the existence of an "enterprise" separate and distinct from the "person" identified, for the following reasons:

(1) Both 1962(a) and 1962(c) speak[7] of a "person" committing an unlawful act in connection with, but distinct from, an "enterprise." The consistent use of the two different terms "person" and "enterprise" throughout section 1962 indicates an intent to distinguish those actors throughout.

(2) As stated in *Bennett v. Berg*, "the RICO act proscribes conduct in which one party, the 'person' subject to the statute, acts upon an entity, the 'enterprise'...." *Bennett*, 685 F.2d at 1061. In making this statement, the Eighth Circuit did not distinguish between (a) and (c) of section 1962, and nothing in *Bennett* gives rise to an inference that the court would view section (a) differently from section (c) for purposes of the separate person-enterprise requirement. Absent proof of a "person" acting upon an "enterprise," RICO is inapplicable, by virtue of the plain language of *Bennett*.

(3) Permitting a RICO cause of action where it is alleged that a corporate entity has conducted its own affairs through a pattern of racketeering activity, without any proof of infiltration of that enterprise by outside "persons," would not comport with congressional intention, inasmuch as one of the primary purposes of Congress in enacting RICO was to prevent the takeover of legitimate business by criminals and cor-rupt organizations. *B.F. Hirsch*, 751 F.2d at 633.

(4) Sections (a) and (c) of 1962 require the presence of the same elements—conduct of an enterprise, a pattern of racketeering activity, and a person. Only the relationship among these elements differs. Section (c) envisions racketeering acts conducted through an enterprise, whereas section (a) portrays the enterprise as the investment object of the criminal violators. Under either (a) or (c), the enterprise must be acted upon by a distinct "person."

(5) A construction of (a) which would obviate the separate enterprise-person requirement would be contrary to the restrictive reading of RICO given by the Eighth Circuit in *Superior Oil* and *Holmberg* and would "aggravate the already hopeless deviation of the RICO statute from its intended purpose in ferreting out organized crime." *Rush v. Oppenheimer & Co.*, 628 F.Supp. 1188, 1197 (S.D.N.Y.1985).

Accordingly, based on the foregoing, the Court finds that plaintiffs' Count II is deficient as a matter of law.

### D. *Filed Rate Doctrine*

■ Northwestern Bell argues that dismissal of plaintiffs' RICO claims is necessitated by the federal "filed rate" doctrine. In *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 91 S.Ct. 692, 95 L.Ed. 912 (1951), the Supreme Court affirmed the district court's dismissal of an action predicated on allegations that plaintiffs were forced to pay unreasonably high rates due to misrepre-

---

7. RICO section 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

The thrust of section 1962(a) is a proscription on the use or investment of illegally acquired funds in an enterprise.

RICO, section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The thrust of section 1962(c) is wrongful association with and control of an "enterprise" by a "person."

sentations made by the defendant in rate proceedings before the Federal Power Commission (FPC). The Supreme Court held that the FPC had exclusive authority to determine a reasonable rate, and that the FPC's decision was conclusive. In *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981), the Supreme Court reversed the trial court's award of damages measured by the difference between the price defendant had paid to plaintiff pursuant to Federal Energy Regulatory Commission (FERC) approved rates and the price defendant had paid others. The Court held that the "filed rate" doctrine forbids an award of damages based on an estimation of what the FERC "might have done had it been faced with the facts of [the] case." *Arkansas Gas*, 453 U.S. at 578–79, 101 S.Ct. at 2430–31. Northwestern Bell also relies on a line of federal antitrust cases, wherein the courts have held that antitrust plaintiffs are precluded from obtaining damages based on alleged illegal price fixing of utility rates, where the alleged damages are measurable by a comparison of the approved tariff and the tariff that would have been approved absent defendant's wrongdoing. *See Keough v. Chicago & Northwestern Ry.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922); *Square D Co. v. Niagra Frontier Tariff Bureau, Inc.*, — U.S. ——, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986). Northwestern Bell argues that the *Keough* line of antitrust cases has relevance to a RICO action because (1) both RICO and the Clayton Act grant a cause of action to one "injured in his business or property," and because (2) both RICO and the Clayton Act provide for the award of treble damages. Defendant argues that the analogous nature of the Clayton Act and RICO remedies make the *Keough* line of cases of valid precedential authority in a RICO case.

*Montana-Dakota, Arkansas Gas*, and the *Keough* line of cases are squarely on point with plaintiffs' RICO claims. Plaintiffs seek to recover damages measurable by a comparison of MPUC-approved rates and the rates that would have been ap-

proved but for defendants' wrongdoing. Under the "filed rate" doctrine, plaintiffs' cause of action is not federally cognizable. The MPUC has exclusive authority to determine a reasonable rate, and the MPUC's decision is conclusive, subject to statutory process. Even assuming that plaintiffs have satisfied the "continuity" prong of *Sedima*, plaintiffs' action must be dismissed by virtue of the filed rate doctrine.

### E. *State Law Claims*

■ Plaintiffs' Count I is a state law claim arising under Minn.Stat. § 609.42 and the common law of bribery. In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the seminal case on the pendent jurisdiction of the federal courts, the United States Supreme Court stated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139. This bold statement has been subsequently qualified somewhat, the Court stating in *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) that whether to proceed with state claims lacking an independent basis of federal jurisdiction after all federal claims have been dismissed is discretionary with the trial court. 397 U.S. at 404, 90 S.Ct. at 1214; *Silva v. Vowell*, 621 F.2d 640 (5th Cir.1980); *McGann v. Mungo*, 578 F.Supp. 1413 (D.S.C.1982). Factors to consider in the exercise of the Court's discretion include considerations of judicial economy, convenience and fairness to litigants, and the avoidance of needless decisions of state law. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. *Reyes v. Edmunds*, 416 F.Supp. 649 (D.Minn.1976). *See also Koke v. Stifel, Nicolaus & Co.*, 620 F.2d 1340, 1346 (8th Cir.1980) (adopting *Gibbs* factors); *Pink Supply Corp. v. Hiebert, Inc.*, 612 F.Supp. 1334, 1347 (D.Minn.1985).

Each of the relevant factors supports dismissal of plaintiffs' pendent state law claims. The case is still at an early stage,

so that there has been no substantial commitment of federal judicial resources. *See, e.g., Briggs v. American Air Filter Co.,* 455 F.Supp. 179 (N.D.Ga.1978) (no substantial commitment of judicial resources to nonremovable claims); *Houlilhan v. Anderson-Stokes, Inc.,* 434 F.Supp. 1324, 1329 (D.D.C.1977) (federal claims dismissed at early stage). Count I of the amended complaint raises an issue of first impression as to the implication of a private cause of action under the Minnesota criminal bribery statute. Needless decision of this unsettled state law issue is best avoided. *Girard v. 94th Street & Fifth Ave. Corp.,* 530 F.2d 66 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed. 798 (1976); *Briggs,* 455 F.Supp. at 82 (novel questions of state law). In sum, no "unusual circumstances," *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975), justifying federal jurisdiction over the pendent state claims are present here. Consequently, plaintiffs' Count I will be dismissed without prejudice as outside the subject matter jurisdiction of the Court. *See Kuhn v. National Association of Letter Carriers, Branch 5,* 570 F.2d 757, 761 (8th Cir.1978) (district court did not have power to consider pendent state claim because it did not have jurisdiction over the federal claim).

Based on the foregoing, and upon all the files, records, and proceedings in this matter,

IT IS ORDERED that:

1. plaintiffs' motion to strike defenses is denied;

2. defendant's motion to dismiss Counts II–V of plaintiffs' amended complaint is granted; and

3. defendant's motion to dismiss Count I of plaintiffs' amended complaint is granted, and Count I is dismissed without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.