Deutsch & Frey, New York City, for plaintiff; Robert E. Frey, New York City, of counsel.

Gerald E. Murray, Walter C. Reid, Harold S. Levy, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case concerns unspecified phone calls plaintiff made within Canada and from Canada to the United States. Plaintiff, a New York resident, directed the Canadian telephone company to bill the cost of these calls to his American telephone account with defendant New York Telephone. It is alleged that the Canadian company billed defendant for these calls in Canadian dollars and that defendant then billed plaintiff for the calls in the same amount of American dollars. At the time the exchange rate of the two dollars was not one-for-one, with the American dollar the stronger currency. As a result, New York Telephone would have billed plaintiff for, in effect, a higher price than it was charged. It allegedly pocketed the difference.

Plaintiff filed this as yet uncertified class action in New York Supreme Court to recover the difference in value between the Canadian and American prices, alleging fraud and money had and received. Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441, alleging subject matter jurisdiction under two federal

question statutes, 28 U.S.C. §§ 1331 and 1337. Following some discovery, defendant has moved to dismiss under Rules 9(b) and 12(c), Fed.R.Civ.P. Plaintiff cross-moves for remand pursuant to 28 U.S.C. § 1447(c) or alternatively for summary judgment.

## I.

■ Because the motion for remand goes directly to the Court's power to adjudicate this dispute, I address it first. Removal was proper only if subject matter jurisdiction exists in federal court. 28 U.S.C. § 1441. Defendant contends that jurisdiction can be found under the federal question statute, 28 U.S.C. § 1331. Section 1331 grants a federal forum to lawsuits "arising under" federal law. Plaintiff contends that his common law causes of action do not so arise.

The leading case is *Ivy Broadcasting Co. v. American Telegraph and Telephone Co.*, 391 F.2d 486 (2d Cir.1968). Plaintiff in *Ivy* operated radio stations. It contracted with the telephone company to provide communications service in connection with the broadcast of Syracuse University football games and New York political conventions. The telephone company allegedly provided inadequate service, ruining plaintiff's broadcasts. Plaintiff sued, stating causes of action for negligence and breach of contract. The district court *sua sponte* dismissed the complaint for want of subject matter jurisdiction, reasoning that the claims arose not under federal law but under the common law of New York State.

The Court of Appeals reversed. The court acknowledged that the remedy which the plaintiff sought was not one granted by federal statutory law, since the acts alleged were not violations of specific provisions of the Communications Act of 1934 ("the Act"), 47 U.S.C. §§ 151–609, a statute which provides a comprehensive scheme of regulation for carriers such as the telephone company. However, the very comprehensiveness of the regulatory scheme established by the Act led the court to consider whether Congress intended to displace state law with federal common law in the governance of contracts involving communications carriers. After considering a number of United States Supreme Court cases in which a uniform federal rule was held to displace state law in actions involving the provision of telegraphic services, the court held that:

> ... questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law ... [T]he states are precluded from acting in this area. Where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law.

391 F.2d at 491. The application of federal common law was held to create federal subject matter jurisdiction. *Id.* at 493. The Supreme Court has since concurred in the latter conclusion. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972) (pollution of interstate or navigable waters).

*Ivy* is controlling here and creates federal subject matter jurisdiction. The holding of *Ivy* is both broad and absolute—"questions concerning the duties, charges and liabilities of ... telephone companies with respect to interstate communications service are to be governed solely by federal law." 391 F.2d at 491. This case involves the charges for the provision of communications service. That it is framed in terms of a tort is irrelevant—the *Ivy* plaintiff, too, was pleading a tort. The only potentially significant difference between this action and *Ivy* is that this action concerns international and wholly foreign service. However, the regulatory scheme of the Act which persuaded the *Ivy* court to apply federal common law extends not only to the provision of interstate but also of foreign communication. Section 201 of the Act, 47 U.S.C. § 201, for example, which governs "service and charges," applies to "every common carrier engaged in interstate and foreign communication." Thus the reason-

ing which led the Court of Appeals to apply federal common law to disputes over interstate service extends equally to disputes over foreign communication. Both are within the Act's regulatory scheme. As a result, federal jurisdiction exists, and whatever claims plaintiff is raising are governed by federal, not state, common law.

Plaintiff argues that because rates for intra-Canada calls are not subject to regulation by the Act, *Ivy* is inapplicable. The specific rates for intra-Canada calls, however, are not at issue here. Plaintiff's concern is with New York Telephone's method of billing for these calls, not the actual price of the calls. Section 201(b) of the Act requires "all charges" in connection with the provision of interstate and foreign communications services to be "just and reasonable." This would appear to include the provision of billing services for foreign calls. In addition, the type of contract under which defendant provides this billing service for the Canadian telephone company must be filed with the Federal Communications Commission ("FCC") pursuant to 47 U.S.C. § 211, *see also* 47 C.F.R. § 43.-51(a)(1), which may veto such contracts if they are "contrary to the public interest." 47 U.S.C. § 201(b). Plainly, billing for intra-Canada calls is subject to regulation under the Act. Plaintiff's objection is meritless. Removal was proper.

## II.

The parties have cross-moved for judgment. Defendant styles its motion as one pursuant to Rule 12(c), Fed.R.Civ.P., but because it relies upon factual matters outside the pleadings which contradict the allegations of the complaint, it is more appropriately treated as a motion for summary judgment pursuant to Rule 56. Because plaintiff has himself filed a motion under Rule 56, I find no prejudice in treating both of the cross-motions as motions for summary judgment.

Based on the evidence submitted by defendant, it appears that the true nature of the transactions between Canadian and American telephone companies is quite different from that stated in the complaint. The complaint asserts that whenever plaintiff made an intra-Canadian or international call from within Canada, the Canadian company would bill New York Telephone in Canadian dollars while New York Telephone would in turn bill plaintiff in stronger American dollars. New York Telephone allegedly kept the difference in value between the two currencies, which plaintiff alleges at the time of his calls amounted to 15 percent of their price.

That is not the way it works. Not surprisingly, the true relationship between the two telephone companies and their customers is more complex.

According to the affidavit of Mary Stachow, an employee of defendant who has work experience in the collection of revenues from international and foreign telephone calls, distribution of revenue collected in the United States to pay for intra-Canadian and Canada/United States telephone calls is (or was at the time of the incidents alleged) governed by a written agreement dated December 21, 1971.

At the time of the incidents alleged in this lawsuit, the Bell System was still a unified monopoly. New York Telephone handled plaintiff's billing and local telephone service, but it was American Telephone and Telegraph Co. which actually settled accounts concerning international and foreign service. The agreement was signed by AT & T and several Canadian telephone companies, and AT & T acted as defendant's agent in dealing with the Canadian telephone companies in all the transactions described below. The Canadian companies themselves formed a corresponding consortium to deal with AT & T.

The agreement establishes a uniform dollar rate for international calls. If payment for the call is to be collected in the United States, the price of the call is to be quoted and collected in American dollars; if the debt is to be collected in Canada, Canadian

dollars are quoted and collected.[1] Agreement, at 4, ¶ 5. The companies established in the agreement a system for dividing the revenues thus collected and agreed to settle accounts monthly. Any payments made to settle accounts are to be made half in "the equivalent of" Canadian and half in "the equivalent of" American dollars. Although the point is not entirely clear, I take this to mean that half of the payment is made in each currency, with the amounts of each currency adjusted to account for their relative values.

The international phone rates specified in the agreement have been filed by defendant with the FCC as a tariff. Not only is defendant required by the tariff to collect these charges, it is required to do so in American dollars:

> In connection with service from points outside the United States ... to points within the United States, when charges to Customers are made by Telephone Companies in the United States rates as specified [in the tariff] ... in United States dollars, apply to all calls.

FCC Tariff No. 263, Regulation No. 2.4.6. (March 26, 1979).

Thus it appears that with regard to calls made between the United States and Canada, both FCC regulations and defendant's contractual commitments require it to apply rates calculated in American dollars. Those are also the rates which are quoted to Americans in Canada, in American dollars.[2] The simplistic "billed in Canadian dollars, paid in American dollars" scheme hypothesized by plaintiff in his complaint appears to have no basis in reality.

By its terms the agreement applies only to international calls. However, according to the Reid and Stachow affidavits, filed by defendant in support of its motion, billing for intra-Canadian calls is also governed by the agreement. The price for intra-Canadian service is not, of course, regulated by the FCC. Rather, it is governed by tariffs filed with Canadian regulatory agencies. According to the affidavits, New York Telephone acts essentially as an agent for collection of payment for the calls. A Canadian company reports to defendant the price, in American dollars, which is to be charged for the intra-Canada call; defendant bills its customer that amount (again in American dollars); and defendant then turns that money over to the Canadian company as part of the agreement's monthly settlement process. If the agreement is adhered to, Americans are quoted rates for calls in American dollars, and the monthly settlement is made half in the equivalent of Canadian and half in the equivalent of American dollars. It is uncertain whether the intra-Canadian phone rates reported to the American companies are adjusted for relative exchange rates or are, like international rates, the same in either dollar. It is also unclear whether defendant turns over all of the money it collects or whether, contrarily, it is paid a fee for collecting payments for intra-Canadian calls.

I have one reservation about defendant's account of its billing method for intra-Canadian calls. As far as I can see, nowhere in the agreement, which appears to deal solely with international calls, are intra-Canadian calls mentioned. Certainly the scheme outlined by Reid and Stachow is

**1.** In what appears to be an effort to mislead the Court as to the nature of the agreement, plaintiff in his initial memorandum of law, at 7, quotes only the second half of the relevant sentence in the agreement, which reads in full, "For [telephone service] the charges for which are payable in Canada, the rates shall be quoted to and payable by the customer in Canadian currency." Of course, by leaving out the initial phrase, "the charges for which are payable in Canada," plaintiff seeks to create the impression that the clause concerning quotation in Canadian currency somehow applies to his situation. It does not, and it is worth noting that his complaint contains no allegation that he was ever quoted prices in Canadian currency. I do not appreciate plaintiff's seeming attempt to create the contrary impression through partial quotation.

**2.** As noted in footnote 2, *supra,* plaintiff does not plead that he was ever quoted a price in Canadian dollars. Even if he was, however, the misrepresentation would appear to have been committed by a Canadian telephone company, not defendant.

not detailed in it. Nevertheless, in the absence of any contrary evidence I accept the sworn testimony of Reid and Stachow, the latter of whom worked in the division of New York Telephone responsible for handling these transactions, that collection and payment of bills for intra-Canada telephone calls are conducted in accordance with the terms of the agreement.

Plaintiff has not submitted any contrary evidence. One would expect that plaintiff, having moved for summary judgment, would have submitted some proof to back up his allegations—indeed, to prove that there was no dispute that his allegations were true. In his memorandum of law, he states as a proposition of fact that he was quoted a price in Canadian dollars but billed in the same amount of American dollars. This is, of course, a somewhat different claim than the one he pleaded in his complaint. Even this claim, however, is supported by no affidavit of plaintiff, as one might expect when an essential element of his claim is that prices were quoted to him in a particular manner.

Instead, plaintiff cites to three other sources of evidentiary support. The first is an excerpt from a deposition of Mary Stachow, the same individual who filed an affidavit in support of defendant's motion. At her deposition, Stachow was asked whether New York Telephone was billed in Canadian dollars for intra-Canadian calls. The question in context is actually somewhat ambiguous. It could be taken as asking the question left open above—whether intra-Canadian tariffs are adjusted to account for the exchange rate when billed in the United States. In any event,

her response was, "I'm not sure. They would tell us to bill $5.00 and we would bill $5.00." This plainly gives no support to plaintiff's position. The second purported source of evidence is a response by defendant to a request to admit. The request is for defendant to admit that Canadian telephone companies billed it in Canadian dollars for the type of calls at issue here. Defendant denied this. I am at a loss to see how this supports plaintiff. Finally plaintiff refers to a letter dated November 8, 1978 from a Mrs. L. Eng to a Mr. Herbert Deutsch, written on New York Telephone stationery. This letter—which in any event is insufficient to create an issue of fact, being unsworn, unauthenticated hearsay—states only that rates for intra-Canada calls are set by Canadian authorities. This, too, gives no comfort to plaintiff. In short, plaintiff has presented no factual support for his claims.[3] Defendant's version of the facts stands undisputed.

Based on defendant's evidence, it appears that the scheme for billing international and intra-Canada calls in the United States is quite different from that pleaded in the complaint. Canadian companies never "bill" defendant for international calls. The price for a Canada-United States call may be determined from a pre-set dollar tariff. If the call is to be billed to the individual customer in the United States, defendant figures the price from the tariff and charges in American dollars. If it is to be billed in Canada, a Canadian company calculates the charges and bills the same number of Canadian dollars. Once a month the two nations' telephone compa-

---

**3.** There is really no mystery in plaintiff's failure to submit an affidavit alleging that misrepresentations had been made to him individually. Plaintiff filed this action as a class action and will presumably seek to have himself declared a representative class plaintiff. The propriety of class treatment depends in part upon whether the fraud alleged was systematic or aberrational. It is no doubt plaintiff's hope to demonstrate that it was standard practice for defendant to quote call prices in Canadian dollars and bill in American dollars. Under such circumstances, class treatment would appear reason-

able. If, on the other hand, quotation in American dollars was the norm and plaintiff's claimed experience was aberrational, class treatment is more dubious.

Neither party has submitted any evidence of defendant's standard practice, but the FCC tariff and defendant's contractual commitments require it to quote prices in American dollars for calls which are to be billed in the United States. If its standard practice deviates from this—and I hasten to add there is absolutely no evidence that this is so—a serious charge of fraud could be made out.

nies split up their respective receipts according to a predetermined formula.

Nor does a Canadian company "bill" defendant for intra-Canada calls in Canadian dollars. If a customer requests that such a call be billed to an American account, the Canadian company reports to defendant the occurrence of the call, the customer to whom the call is to be charged, and the price for the call. The price reported to defendant is calculated according to Canadian tariffs and is stated in (and is to be billed in) American dollars. Whether the price is adjusted for currency differences or is, like the rates for international calls, stated in the same number of Canadian and American dollars, is unclear. I infer from defendant's conspicuous silence on the question, however, that no adjustment is made. Defendant bills all such calls and, once a month, turns over what it collects to the Canadian company. Whether defendant keeps a portion of the proceeds as the equivalent of a "service charge" is unclear.

Thus, defendant does not systematically skim off the difference between the Canadian and American price of foreign and international calls billed in the United States. It does appear to be true, however, that the real price of such calls to an American customer varies depending upon whether he or she pays for them immediately, in Canada, or has them charged to an account maintained in the United States. The difference in real price is equivalent to the difference in value of the Canadian and American dollars. It remains to consider the legal consequences of this state of affairs.

### III.

■ Defendant raises the "filed tariff" doctrine as a complete defense to the claims regarding the Canada-United States calls. This doctrine was first pronounced by the Supreme Court in an anti-trust ac-

tion entitled *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922). Plaintiff in *Keogh* alleged that the defendants had concocted rail shipping rates in violation of the Sherman Act. The rates were charged under a tariff filed with and approved by the Interstate Commerce Commission. In dismissing the action, Justice Brandeis essentially held that a shipper may not be held liable for damages in the nature of an overcharge when charging an approved tariff:

> Section 7 of the Anti-Trust Act gives a right of action to one who has been "injured in his business or property." Injury implies violation of a legal right. The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper. The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.

260 U.S. at 163, 43 S.Ct. at 49. According to the Second Circuit, "[t]he rationale [for the doctrine] is that the regulatory agency determines the legal rate and the utility must collect it while it is in effect." *City of Groton v. Connecticut Light & Power Co.*, 662 F.2d 921, 929 (2d Cir.1981).[4]

I conclude that "filed tariff" doctrine bars any recovery by plaintiff for the cost of Canada-United States calls under a contractual theory such as money had and received. Money had and received is a somewhat nebulous doctrine. It is sometimes spoken of as *quasi*-contractual in nature, *see Miller v. Schloss*, 218 N.Y. 400, 406, 113 N.E. 337 (1916), and is grounded in equity. Ordinarily it is employed when money which in good conscience should belong to one party has somehow found its

---

4. The filed tariff doctrine, however, does not immunize a regulated utility from all liability. For example, under certain circumstances it does not shield a utility from liability when charging an ultimately disapproved tariff, *id.*, at 929; *Litton Systems, Inc. v. American Telephone* & *Telegraph, Inc.*, 700 F.2d 785, 820 (2d Cir. 1983), and it provides no protection from lawsuits not directly connected with rates. *See, e.g., Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973).

way into the hands of another. *See Northern Trust Co. v. Chase Manhattan Bank, N.A.*, 582 F.Supp. 1380, 1384 (S.D.N.Y. 1984). It may be used, for example, to recover money which has been paid to one on the understanding that it be paid to another when the second payment is not or cannot be made. *See Unger v. Travel Arrangements, Inc.*, 25 A.D.2d 40, 266 N.Y. S.2d 715, 720–721 (1966). Reflecting its general nature, the elements of the cause of action are stated broadly. The Second Circuit recently formulated them thus: 1) receipt by defendant of money belonging to plaintiff, 2) a benefit to defendant from receipt of the money, and 3) a finding that defendant should not equitably be permitted to keep the money. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir.1984).

The filed tariff doctrine is relevant to the third element. In order to recover, plaintiff must show that he has a superior equitable claim on the money at issue. The existence of a filed tariff essentially neuters any claim plaintiff might have that the utility's adherence to the rate is improper or inequitable. The filed tariff doctrine defines such a rate as wholly proper. In this case, the filed tariff authorized defendant to charge the specified rates in American dollars. This is precisely what it did. So long as defendant provided the requisite service, it was lawfully entitled by those tariffs to charge those rates. The filed tariff doctrine thus insulates defendant from any equitable claim that its charging these rates was improper.[5]

■ Because the rates for intra-Canada calls are set by Canadian tariffs, defendant may not invoke the filed tariff doctrine to protect itself from liability for those calls.

Nevertheless, it seems likely that a claim for money had and received concerning the intra-Canada calls will be unsuccessful. First, it is clear that if, as defendant seems to claim, rates for intra-Canada calls were quoted to plaintiff in American dollars, equity would not demand any refund to plaintiff. The quote constituted in essence an offer and plaintiff's making the call contractually committed him to pay the tariff rate in American dollars. Second, if the rate was quoted by a Canadian company in Canadian dollars, once defendant surrendered all of the money collected for the call to the Canadian company defendant was released from liability. In this circumstance, defendant was acting as a billing agent for the Canadian company. Once defendant paid its principal the entire sum collected, it was relieved of any liability to plaintiff under the doctrine of money had and received. *Unger, supra*, 266 N.Y.S.2d at 721. Plaintiff's remedy would lie in Canada. If plaintiff was quoted in Canadian dollars, he may, however, be able to regain any service charge which defendant retained. *See Unger, supra*, 266 N.Y.S.2d at 722 (defendant, essentially a broker, forced to return retained commission on unconsummated sale to plaintiff but released from liability on the remaining sale price because defendant had turned over remainder to seller).

### IV.

■ Claims of fraud are different. The filed tariff doctrine is designed to protect utilities charging filed rates for lawfully provided service. It is of no help to a defendant which fraudulently induces a plaintiff to pay a filed rate or which otherwise exacts payment by fraud. There is

---

**5.** In addition to the filed tariff doctrine, at this point in its papers defendant raises the issue of exhaustion of administrative remedies. It would be proper to require exhaustion only if plaintiff were challenging the reasonableness of defendant's tariff rate or of its practice of billing in American dollars without adjusting for the value of the currency. I do not read the complaint as making such a challenge, although the question is complicated by the mistaken allegations in the complaint. Plaintiff is not complaining about the existence or propriety of the tariff and the practice of charging in unconverted dollars *per se*. He is complaining about defendant's failure to tell him that he had the option of saving money by paying for his calls in Canada. Consequently, it is not the practice which plaintiff challenges but defendant's failure to make him aware of it. The case resembles *Nader v. Allegheny Airlines, Inc.*, 445 F.Supp. 168 (D.D.C.1978). No exhaustion is necessary.

nothing in the policy underpinnings of the doctrine which would cause it to protect a defendant which unlawfully exacts payment, even at a lawful rate.

■ Plaintiff, however, has yet to state a viable claim for fraud. I find defendant's motion to dismiss for failure to plead fraud with particularity wholly justified. Rule 9(b), Fed.R.Civ.P. A fraud plaintiff is required to state in his or her complaint not only the specific fraudulent misrepresentations alleged but also the time when those misrepresentations occurred and the circumstances of their occurrence which give rise to an inference of fraud. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979). Plaintiff has not even pleaded any misrepresentations by defendant, let alone the time and circumstances of their occurrence. He simply states (falsely, it appears) that defendant keeps the difference between the American and Canadian price for these calls and that this constitutes fraud. Such conclusory pleading is wholly inadequate.

At one point in his memorandum of law plaintiff claims that defendant quoted him a price in Canadian dollars and charged him in American dollars. If plaintiff wishes actually to plead this, rather than merely to have his lawyers ineffectually assert it in a memorandum of law, he must state, at a minimum, the time at which this misrepresentation was made to him, the person who made it, and the circumstances which would cause one to infer a fraudulent intent from it.

At other points in his memorandum of law plaintiff seems to argue that it was defendant's failure to inform him of the option of paying immediately in Canadian dollars which constituted the fraud he wishes to allege. If this is so, he must allege the occasions on which this material information was withheld from him, the circumstances which created in defendant a duty to disclose the information, intent, deception, reliance, and damages. *See Aaron Ferer & Sons, supra*, 731 F.2d at 123; *Kaplan v. ITT–U.S. Transmission Systems, Inc.*, 589 F.Supp. 729, 736 (E.D.N.Y.1984). Because plaintiff's fraud pleading is inadequate, I dismiss the claims without prejudice, and with leave to replead.

### V.

■ The parties extensively briefed the issue of primary jurisdiction. Defendant argues that this action should be stayed pending referral of plaintiff's claims to the FCC. I find it unnecessary to discuss the issue in the detail which the parties devoted to it. Judge Glasser covered the same ground in comprehensive fashion in his recent decision in *Kaplan v. ITT–U.S. Transmission Systems, Inc., supra*, 589 F.Supp. at 733–736. For the reasons stated therein, I conclude that application of the doctrine of primary jurisdiction is inappropriate to the common law causes of action pleaded in this case. Plaintiff is entitled to an immediate judicial forum. I deny defendant's motion to stay the action on this ground.

Finally, defendant also raises a non-dispositive statute of limitations argument, asserting that recovery for all calls made more than two years prior to the filing of the lawsuit is barred on grounds of the two-year statute of limitations found in 47 U.S.C. § 415(b). Section 415(b) by its express terms bars only complaints filed with the FCC more than two years after accrual of a claim. However, an extensive analysis of the statutory history led the court in *Ward v. Northern Ohio Telephone Co.*, 251 F.Supp. 606 (N.D.Ohio 1966), *aff'd. per curiam*, 381 F.2d 16 (6th Cir.1967) to conclude that § 415(b) was also intended to apply to suits filed in district court. The *Ward* decision has been unanimously adopted by those few courts which have considered the issue in the intervening years. *See Pavlak v. Church*, 727 F.2d 1425 (9th Cir.1984); *Swarthout v. Michigan Bell Telephone Co.*, 504 F.2d 748 (6th Cir.1974); *Cole v. Kelley*, 438 F.Supp. 129 (C.D.Cal.1977); *Hofler v. American Telephone and Telegraph Co.*, 328 F.Supp. 893 (E.D.Va.1971).

However, because of the difficulty which sometimes arises in determining when a cause of action for fraud accrues, I will not

hold at this time that recovery for all calls made more than two years before the filing of the action is necessarily barred. I do note, however, that a two year statute of limitations is apparently applicable. Application of the statute to these facts awaits further fleshing out of the details of the fraud.

## VI.

In conclusion, defendant's motions to dismiss this action entirely, to stay it, or to refer it to the FCC are denied, as is plaintiff's motion for summary judgment.

Summary judgment is granted to defendant on the claim for money had and received regarding international (Canada-United States) telephone calls.

Defendant's motion to dismiss the fraud claims for failure to comply with Rule 9(b), Fed.R.Civ.P., is granted. Plaintiff is granted twenty days' leave from the date of filing of this decision to file an amended complaint spelling out his fraud claims in proper detail. In order that it may be determined whether plaintiff states a viable claim for money had and received concerning the intra-Canada calls, plaintiff is directed to replead this claim, stating when, by whom, and in what currency the intra-Canadian calls were quoted to him, and whether he informed the person making the rate quote that he intended to bill the call to his New York account. If no amended pleading is submitted within that time, it will be assumed that plaintiff cannot plead viable claims, and the entire action will be dismissed with prejudice.

In light of the apparently baseless nature of many of the factual allegations in plaintiff's initial complaint, I find it appropriate to remind him and his lawyers of the requirement of Rule 11, Fed.R.Civ.P., that every attorney who signs a pleading does so only upon finding "after reasonable inquiry [that the pleading] is well grounded in fact and is warranted by existing law." Imposition of sanctions is mandatory when Rule 11 is violated.

I find no merit in the remainder of defendant's arguments.

It is SO ORDERED.