H.J. INC., a Minnesota corporation, Kirk Dahl, Larry Krugen and Mary Krugen, individually and d/b/a Photo Images, Susan Davis, Robert Neal, Isaac H. Ward, Richard L. Anderson, Thomas J. Mott, and all others similarly situated, Appellants,

v.

NORTHWESTERN BELL TELEPHONE COMPANY, a subsidiary of U.S. West, A.B.C. individually and D.E.F. as corporations, and other unnamed Co-conspirators, Appellees.

No. 90–5245.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1991.

Decided Jan. 15, 1992.

**486**

Mark Reinhardt, St. Paul, Minn., argued (Susan Bedor and John Cochrane, on brief), for appellants.

John D. French, Minneapolis, Minn., argued (John F. Beukema, James L. Volling and Stephen T. Refsell, on brief), for appellees.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and DUMBAULD,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

This is the second appeal in this class action arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961–1968 (West 1984 & Supp. 1991). The H.J. class consists of all purchasers of "telecommunications goods and services" from Northwestern Bell Telephone Company between 1980 and 1986. The H.J. class alleged that Northwestern Bell bribed members of the Minnesota Public Utilities Commission for the purpose of influencing the officials in setting telephone rates in Minnesota. The H.J. class alleged violations of Minnesota's bribery statute, Minn.Stat.Ann. § 609.42 (West 1987), and Minnesota common law (Count I), and several provisions of RICO.[1] (Counts II–V). The district court[2] dismissed the H.J. class's complaint, holding that its RICO claims were barred by the filed rate doctrine and that its state law claims were barred by res judicata. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 734 F.Supp. 879, 888 (D.Minn.1990). We affirm.

The procedural history of this case is lengthy. The district court first dismissed the H.J. class's complaint in 1986. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 648 F.Supp. 419 (D.Minn.1986). The district court held that: (1) the H.J. class did not allege facts constituting a "pattern of racketeering activity" under RICO; (2) the H.J. class failed to state a claim under section 1962(a) of RICO because it failed to allege a RICO "enterprise" separate and distinct from a RICO "person"; and (3) the filed rate doctrine barred the H.J. class's claims. *Id.* at 434–29. The court granted Northwestern Bell's motion to dismiss the RICO counts, dismissed the pendent state law claim without prejudice, *id.* at 429–30, and later denied the H.J. class's motion for reconsideration. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 653 F.Supp. 908, 916 (D.Minn. 1987).

This court affirmed the dismissal, holding that the H.J. class failed to allege a pattern of racketeering activity under RICO. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 829 F.2d 648, 649–50 (8th Cir.1987). We did not consider the other bases for the district court's dismissal. *Id.* at 650.

---

\* THE HONORABLE EDWARD DUMBAULD, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation, concurred in the result reached by the court at conference but became ill and had not returned to work so as to be able to participate in the preparation of the opinion.

1. *Count II alleged that Northwestern Bell received income through its alleged acts of bribery and invested such income in its own operation in violation of 18 U.S.C. § 1962(a). Count III alleged that Northwestern Bell acquired or maintained interest or control of the Minnesota Public Utilities Commission through its acts of* bribery in violation of 18 U.S.C. § 1962(b). Count IV alleged that Northwestern Bell was associated with the Commission and conducted and participated in the conduct and affairs of the Commission through its acts of bribery in violation of 18 U.S.C. § 1962(c). Count V alleged that Northwestern Bell and its employees conspired with Commission officials to violate RICO in violation of 18 U.S.C. § 1962(d).

2. THE HONORABLE HARRY H. MACLAUGHLIN, United States District Judge for the District of Minnesota.

The Supreme Court reversed, holding that the H.J. class's complaint should not have been dismissed for failing to plead a sufficient pattern of racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). The Court did not consider the other two grounds on which the district court had relied in dismissing the action. *Id.* at 234 n. 1, 109 S.Ct. at 2898 n. 1.

Following the Supreme Court's reversal, we remanded the case to the district court, *H.J. Inc. v. Northwestern Bell Tel. Co.*, No. 87–5121, slip op. at 2 (8th Cir. Oct. 30, 1989), and Northwestern Bell renewed its motion for dismissal. The district court ordered dismissal of the H.J. class's complaint, ruling again that its RICO claims were barred by the filed rate doctrine. *H.J., Inc.*, 734 F.Supp. at 882–84. The court found further support for its dismissal of the H.J. class's RICO claims in the doctrines of abstention and clear statement, *id.* at 886–88, concluding that "Congress did not intend that the additional sanction of treble damages ... be available against defendants under RICO for the actions alleged in plaintiffs' complaint."[3] *Id.* at 888.

In addition to the lengthy procedural history of this case, there have been other proceedings relating to this case. Shortly after the district court's 1986 decision, the H.J. class brought a parallel action in Minnesota state court. In addition to its bribery and RICO claims, the H.J. class asserted a claim for unjust enrichment. The Minnesota Court of Appeals affirmed the state trial court's dismissal of the action, holding that: (1) there is no private right of action under Minnesota statutory or common law for damages caused by the alleged bribery of public officials; (2) the H.J. class's RICO claims were barred by res judicata; and (3) the H.J. class's unjust enrichment claim was barred by Minn.Stat. Ann. § 237.26 (West 1972) because it was a collateral attack on a ratemaking decision of the Commission. *H.J. Inc. v. Northwestern Bell Corp.*, 420 N.W.2d 673, 675–77 (Minn.Ct.App.1988). The Minnesota Supreme Court denied the H.J. class's petition for review. *H.J. Inc. v. Northwestern Bell Tel. Corp.*, 420 N.W.2d 673 (Minn. May 16, 1988). The district court dismissed with prejudice the H.J. class's state law bribery claims (Count I), ruling that the claims were barred by res judicata. 734 F.Supp. at 888.

While this case was pending, the Minnesota Attorney General petitioned the Commission to reopen and reconsider NWB 83–600, a proceeding on a rate increase requested by Northwestern Bell in 1983 and granted in 1984. The Minnesota Court of Appeals held that the Commission could properly reopen and vacate this rate. *In re Minnesota Pub. Utilities Comm'n*, 417 N.W.2d 274, 279–83 (Minn.Ct.App.1987), *cert. denied*, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988). As a result of the reconsideration, the Commission lowered the rate increase from $57,148,000.00 to $45,603,000.00. In May 1987, Northwestern Bell implemented new rates that are approximately $9 million per year lower than the rates that were in effect when the H.J. class brought this case. Because the Commission lacked authority to order refunds, the Attorney General for the State of Minnesota brought an action in Minneso-

---

**3.** Northwestern Bell had raised numerous other reasons for dismissal. In addition to claiming that Count II of the H.J. class's complaint should be dismissed because the H.J. class did not allege a "person" distinct from the RICO "enterprise" under section 1962(a), Northwestern Bell also argued that dismissal was appropriate because: (1) the Commission is not an appropriate "enterprise" under sections 1962(b) and (c); (2) the H.J. class did not allege the requisite "interest in or control of" the Commission on the part of Northwestern Bell within the meaning of section 1962(b); (3) Northwestern Bell is not "employed by or associated with" the Commission within the meaning of section 1962(c); (4) the H.J. class failed to allege Northwestern Bell's participation as a "principal" as required by section 1962(a); (5) the H.J. class failed to allege a "racketeering injury" by reason of Northwestern Bell's alleged violations of section 1962(a), (b), and (d); (6) the H.J. class failed to allege a proper RICO conspiracy pursuant to section 1962(d); and (7) RICO's pattern requirement is unconstitutionally vague. The district court declined to consider these alternate grounds for dismissal. 734 F.Supp. at 888 n. 3.

ta state court to compel Northwestern Bell to refund the difference between the original 1984 and reconsidered 1987 rates. The parties settled that action in September 1989, and Northwestern Bell has refunded approximately $32 million to telephone customers.

## I.

The H.J. class first argues that the district court erred in holding that its RICO claims are barred by the filed rate doctrine. The H.J. class argues that the filed rate doctrine does not apply because: (1) Northwestern Bell cannot use the filed rate doctrine to shield it from its own fraudulent conduct; (2) the H.J. class did not ask the district court to set new rates; and (3) the filed rate doctrine is a federal doctrine that applies only to federal agencies.

■■■ The filed rate doctrine "forbids a regulated entity [from charging] rates for its services other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981). The filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue. *Id.* at 578–79, 101 S.Ct. at 2930–31.

The purpose of the filed rate doctrine is to: (1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) insure that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require. *See id.* at 577–78, 101 S.Ct. at 2930–31. The Supreme Court recently explained: "The duty to file rates with the Commission ... and the obligation to charge only those rates ... have always been considered essential to preventing price discrimination and stabilizing rates." *Maislin Ind., U.S. Inc. v. Primary Steel, Inc.*, ── U.S. ──, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990).

The district court, applying the same reasoning as it did in its 1986 dismissal, concluded that the filed rate doctrine barred the H.J. class's RICO claims because the class sought to recover damages amounting to the difference between the approved rates and the rates that would have been approved but for Northwestern Bell's wrongdoing.[4] *H.J., Inc.*, 734 F.Supp. at 882–84; *H.J., Inc.*, 648 F.Supp. at 428–29. In so ruling, the court relied on a line of federal cases, *Montana–Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951); *Arkansas–Louisiana Gas Co.*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856; *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986); and *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922). These cases held that the filed rate doctrine barred the various claims when the measure of damages is determined by comparing the approved rate and the rate that allegedly would have been approved absent the wrongful conduct. 734 F.Supp. at 882–84. The court also relied on two district court decisions, *Carr v. Southern Co.*, 731 F.Supp. 1067 (S.D.Ga.1990) and *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1387 (E.D.N.Y.1989) (*LILCO*), to support its dismissal of the H.J. class's RICO claims. After the district court's dismissal, however, the Eleventh Circuit reversed the district court's decision in *Carr*, and the Second Circuit, although affirming on other grounds, rejected the lower court's analysis in *LILCO*. *See Taffet v. Southern Co.*, 930 F.2d 847 (11th Cir.1991); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir.1990).

## A

■■■ The H.J. class first argues that the filed rate doctrine does not apply because the "doctrine has never been extended to protect a defendant from its own wrongdo-

---

4. Plaintiffs' first amended complaint seeks damages for "the compensation Northwestern Bell was allowed to receive by the [Commission] ... in excess of what would be fair and reasonable charges to plaintiffs ... and that said unfair and unreasonable compensation was caused by the involvement ... in bribery, attempts to bribe, conspiracy and racketeering activities...."

ing." The H.J. class claims that the doctrine has not been applied when the fraud that has been committed is extrinsic fraud or a fraud committed upon the agency itself. The H.J. class points to a footnote in *Arkansas Louisiana Gas Co.*, in which the Court stated: "We save for another day the question whether the filed rate doctrine applies in the face of fraudulent conduct." 453 U.S. at 583 n. 13, 101 S.Ct. at 2933 n. 13.

■ It is true that the Supreme Court has not considered the question of whether the filed rate doctrine applies when plaintiffs complain that the regulatory agency itself was involved in the alleged fraudulent conduct. We are convinced, however, that the underlying conduct does not control whether the filed rate doctrine applies. Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations. Support for this conclusion is found in the Supreme Court rulings applying the filed rate doctrine. For example, in *Montana–Dakota Utilities Co.*, the Supreme Court applied the filed rate doctrine even when one party allegedly defrauded the other in reaching an agreement as to the rates each would charge. 341 U.S. at 248, 71 S.Ct. at 693–94. In *Montana–Dakota*, the plaintiff sought to recover alleged overcharges from an electric company. Plaintiff exchanged electricity with the defendant electric company, and the electricity exchanges were made pursuant to contracts which had been filed with the Federal Power Commission. *Id.* Plaintiff alleged that the filed and approved rates were fraudulent and unlawful because they were the product of an interlocking directorate. *Id.* The Supreme Court affirmed the dismissal of the claim, holding that the Federal Power Commission had the exclusive power to determine the reasonable rate for the interstate sale of electric power and that its decision was conclusive. *Id.* at 251–52, 71 S.Ct. at 695–96.

Similarly, in *Square D Co.*, the Supreme Court held that the filed rate doctrine barred plaintiffs' antitrust claim. 476 U.S.

at 415–23, 106 S.Ct. at 1926–30. Plaintiffs complained that carriers and the Tariff Bureau (a nonprofit corporation engaged in collective ratemaking activities) conspired to fix rates for transporting freight. *Id.* at 411–12, 106 S.Ct. at 1923–24. Because the rates had been filed with the Interstate Commerce Commission, the Court concluded it would have to measure damages based on the difference between the filed rates and what the rates would have been in a freely competitive market, and thus the filed rate doctrine barred plaintiffs' antitrust action. *Id.* at 415–17, 106 S.Ct. at 1926–27. In reaching this conclusion, the Court relied on *Keogh*, specifically observing that Congress had not overruled that decision despite opportunities to do so. *Id.* at 424, 106 S.Ct. at 1930–31.

In *Keogh*, a shipper sued several carriers, alleging that the carriers conspired to set arbitrarily high rates in violation of federal antitrust laws. 260 U.S. at 159–60, 43 S.Ct. at 48. Plaintiff claimed that the carriers charged tariff rates that were "higher than the rates would have been" absent their illegal agreement. *Id.* at 160, 43 S.Ct. at 48. The carriers had filed the tariff rates with the Interstate Commerce Commission, and the Commission approved the rates. *Id.* The Supreme Court held that plaintiff failed to state an antitrust action because the exclusive remedy was contained in the Act to Regulate Commerce, which provided for a damage recovery. *Id.* at 162–63, 43 S.Ct. at 49–50. The Court also held that the plaintiff could not recover damages for the alleged overcharges because the Commission's approval of the rate established the lawfulness of the rate. *Id.* at 163, 43 S.Ct. at 49–50. The Court observed that antitrust relief would frustrate Congress' intent to ensure uniform rates and would require the Court to speculate about the rate that would have been set by the carriers and approved by the Commission absent the conspiracy. *Id.* at 163–65, 43 S.Ct. at 49–50. The Court explained: "The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier ... And they are not affected by the tort of a third party." *Id.* at 163, 43 S.Ct. at 49

(citations omitted). The Supreme Court, recognizing the continuing validity of *Keogh*, recently quoted the first of these two sentences in *Maislin Industries*, 110 S.Ct. at 2766.

The H.J. class cites *Gulf States Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465 (5th Cir.1987), to support its contention that the filed rate doctrine does not apply when there is "active fraud." In *Gulf States Utilities*, the Fifth Circuit held that contracts in which the plaintiff agreed to purchase electricity from the defendant at prices which were then incorporated in rate filings might be set aside if the plaintiff could show that it had been fraudulently induced to enter into the contracts. *Id.* at 1471–72. The court, however, distinguished setting aside the contracts from setting aside the rates, noting that "setting aside the contracts ... would not interfere with the [federal agency's] rate-making powers." *Id.* at 1472. The court stressed that "the district court may not set aside the contracts on the theory that [the defendant's] rates are too high." *Id.*

The H.J. class also points to *Nordlicht v. New York Telephone Co.*, 617 F.Supp. 220 (S.D.N.Y.1985), *aff'd*, 799 F.2d 859 (2d Cir. 1986), *cert. denied*, 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987). There, the plaintiff, a New York resident, made telephone calls in Canada and directed the Canadian telephone company to bill the cost of the calls to his account with defendant New York Telephone. 617 F.Supp. at 221. The Canadian company billed New York Telephone in Canadian dollars, and New York Telephone billed the plaintiff in the same amount of American dollars, despite a differing exchange rate. Plaintiff sought to recover the difference. *Id.*

The New York district court held that plaintiff's claim was barred by the filed tariff doctrine because the filed tariff authorized New York telephone to charge the specified rates in American dollars. *Id.* at 227. Nevertheless, the court observed that if the plaintiff had adequately alleged fraud, the outcome would be different:

> Claims of fraud are different. The filed tariff doctrine is designed to protect utilities charging filed rates for lawfully provided service. It is of no help to a defendant which fraudulently induces a plaintiff to pay a filed rate or which otherwise exacts payment by fraud. There is nothing in the policy underpinnings of the doctrine which would cause it to protect a defendant which unlawfully exacts payment, even at a lawful rate.

*Id.* at 227–28. The H.J. class says that this language shows that a fraud exception exists to the filed rate doctrine. However, the fraud claim in *Nordlicht*, which the court found to be inadequately pleaded, was that the plaintiff had been tricked into paying a rate that he should not have had to pay. *Id.* at 228. The claim did not attack the rate itself and did not require the court to "second-guess" the rate-making agency.

The H.J. class also argues that the filed rate doctrine does not apply when the fraud was "extrinsic to" the rates approved by the Commission. The class cites *City of Kirkwood v. Union Electric Co.*, 671 F.2d 1173 (8th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983), for support. In that case, we held that the filed rate doctrine did not bar a city's antitrust action against an electric utility company. *Id.* at 1179. The city did not attack the individual rates, but instead complained of "anti-competitive effects resulting from the interaction of the rates." *Id.* We concluded that an award of antitrust damages based on an alleged price squeeze would not conflict with the regulatory agencies' authority to oversee rates because the city did not challenge the reasonableness determinations as to any of the filed rates. *Id.* We further supported our conclusion that the filed rate doctrine did not apply by observing that "the doctrine was created to protect customers, not competitors." *Id.* (citing *Essential Communications Sys., Inc. v. American Tel. & Tel. Co.*, 610 F.2d 1114, 1121 (3d Cir.1979)). Despite this latter statement, we made clear that if the city challenged the reasonableness of the individual rates in question, its claim would be barred. *Id.*

The district court in this case relied on *Carr v. The Southern Co.*, 731 F.Supp. 1067 (S.D.Ga.1990), in concluding that the filed rate doctrine barred the H.J. class's RICO claims. 734 F.Supp. at 884. In *Carr*, a class of electric power customers brought a RICO action alleging that the electric utilities had used fraudulent accounting methods to understate their net income in order to influence the rate-making process. *Id.* at 1068. The district court held that plaintiffs' claims were barred by the filed rate doctrine, *Burford* abstention, and the doctrine of clear statement. *Id.* at 1071–73.

After oral argument in this case, the Eleventh Circuit reversed the district court's decision in *Carr. Taffet v. Southern Co.*, 930 F.2d 847 (11th Cir.1991). The Eleventh Circuit concluded that the filed rate doctrine did not bar plaintiffs' RICO claims. *Id.* at 856. The court considered the underlying purposes of the filed rate doctrine, and concluded that "[t]he possibility of a RICO action against a utility which defrauds its [state rate-making agency] creates great incentive for that utility to present its [state agency] with accurate and truthful information...." *Id.* As a consequence, the court held that permitting a RICO action would enhance, rather than infringe upon the state's authority to set reasonable and uniform rates, and thus, the filed rate doctrine did not apply. *Id.* *Accord Wegoland Ltd. v. Nynex Corp.*, No. 90 Civ. 496, slip op. at 13–17 (S.D.N.Y. Sept. 26, 1991) (relying on reasoning of Second Circuit in *LILCO* to conclude that plaintiffs' RICO claims against telephone company are not barred by the filed rate doctrine).

The facts in this case differ from those in *Taffet*. Here, the Attorney General for the State of Minnesota petitioned the Commis-

sion to reopen certain of the rates charged by Northwestern Bell, resulting in a prospective rate decrease and a refund. The Minnesota Court of Appeals recognized that the Commission possessed "the implied authority to reopen judgments at any time based on the 'fraud on the court' doctrine" recognized by Minn.R.Civ.P. 60.-02. 417 N.W.2d at 281–82.

It does not appear in *Taffet* that the states of Alabama or Georgia took such action. Indeed, in *Taffet* the court observed that state law prevented the plaintiffs from recovering any damages through the state agencies. 930 F.2d at 853 and n. 5. The *Taffet* court held that the filed rate doctrine did not apply based on its conclusion that allowing a RICO action would provide "great incentive" for the utility to present its rate-making agency with "accurate and truthful information" upon which to base its rate decisions. *Id.* at 856. The court held that permitting a RICO action "would enhance rather than infringe upon the [agency's] authority to set reasonable and uniform rates." *Id.*

The Eleventh Circuit's rationale for refusing to apply the filed rate doctrine does not apply here. In *Taffet*, the Commission did not reopen any prior rate decision. 930 F.2d at 853 and n. 5. In Minnesota, however, the Commission may reopen the rates, and indeed, with respect to the 83–600 rate, has done so.[5] Although the Second Circuit did not discuss the application of the filed rate doctrine in *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir.1990) (*LILCO*), the Attorney General for the State of New York stated that "an award of [RICO] damages ... would enhance, rather than conflict with, New York's regulatory scheme," *id.* at 1309, and the Commission directed a letter to the court saying that the Commis-

5. Here, the Attorney General for the State of Minnesota submitted a letter stating that the settlement of the 83–600 case "was limited solely to restitution for overcharges in the 83–600 case," and that the Attorney General did not "inten[d] ... to settle any other pending action." The Attorney General went on to state that "the continued litigation of the H.J., Inc. case can have no effect on the state's regulatory interest in the 83–600 case," and that he considers the "lawsuit to be a totally separate action that in no way conflicts with or infringes upon the Commission's authority or our settlement with respect to the 83–600 case." The important distinction between this case and *Taffet* is that in Minnesota a mechanism has been utilized whereby customers may recoup overcharges, and thus, the utilities have an incentive to provide truthful and accurate information to the Commission.

sion did not intend to get involved in the federal action. *Id.*

While the Second and Eleventh Circuits in *LILCO* and *Taffet,* respectively, rejected the legal reasoning of the two lower court decisions relied upon by the district court here, it is apparent that the district court's analysis of the underlying Supreme Court decisions addressing the filed rate doctrine correctly recognized the strength and scope of the Court's opinions.

For these reasons, we reject the H.J. class's argument that the filed rate doctrine does not apply in the face of fraudulent conduct.

### B

■ The H.J. class also argues that the filed rate doctrine does not apply because it does not ask the court to engage in rate-making activities. The H.J. class seemingly departs from its request for damages contained in its first amended complaint and says that it is not challenging the reasonableness of any rate the Commission previously approved, but instead, is seeking damages due to Northwestern Bell's RICO violations.

The H.J. class points to *Litton Systems, Inc. v. American Telephone & Telegraph Co.,* 700 F.2d 785 (2d.Cir.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). In *Litton,* the Second Circuit held that the filed rate doctrine did not bar the antitrust claims in issue:

> This case can be distinguished from *Keogh* and decisions holding the filed rate doctrine applicable, because the issue here is not the reasonableness of the interface tariff rate as compared to some other rate that might have been charged, but instead whether the [agency] requirement itself was reasonable, i.e., whether there should have been any charge at all.

*Id.* at 820 (citations omitted). We are unpersuaded by *Litton.* The H.J. class cannot contend that there could be no charge for telephone services. Rather, the H.J. class's claim is simply that its members have been injured because they paid too much for telephone services or that there could be no rate increases for the 1980–1986 period, a damage concept that falls squarely within the filed rate doctrine. *Arkansas Louisiana Gas Co.,* 453 U.S. at 578–79, 101 S.Ct. at 2930–31 (plaintiffs request for damages "amounts to nothing less than the award of a retroactive rate increase based on speculation about what the Commission might have done had it been faced with the facts of this case").

The H.J. class also relies on *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 674 F.2d 1252 (9th Cir.1982), *rereported* at 690 F.2d 1240, *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). In that case, plaintiff claimed that it was damaged because defendant prevented it from filing its rate with the Interstate Commerce Commission for two years. 674 F.2d at 1276. The Ninth Circuit refused to apply the filed rate doctrine for three reasons. First, there was no remedy under the Act to Regulate Commerce for plaintiff's claim. *Id.* Second, the action did not challenge the legality of the rate approved by the Commission, and therefore, "would not disturb any uniform rates." *Id.* Third, judicial relief would not involve speculation as to what the rate "might have been." *Id.*

The H.J. class claims that the circumstances here are similar to those in *Clipper Exxpress* because no other forum exists for it to bring its RICO claims, and the relief it seeks would not disturb uniform rates or require the court to establish rates.

We are not convinced by the H.J. class's reasoning. First, the class is not necessarily entitled to a forum to recover RICO damages. Although the Supreme Court in *Arkansas Louisiana Gas* did not consider whether the filed rate doctrine applied in the face of "affirmative misconduct," 453 U.S. at 583, 101 S.Ct. at 2933, the Court did acknowledge that application of the filed rate doctrine would leave plaintiff's alleged state-law violation unredressed. *Id.* at 584, 101 S.Ct. at 2933. Nevertheless, the Court accepted this result to prevent state laws from upsetting federal authority. *Id.* Similarly, in *Square D,* the Court held that private treble damages were not available under the Sherman Act, 476 U.S. at 417–24,

106 S.Ct. at 1927–31, even though plaintiffs "alleged a valid antitrust action." *Id.* at 414, 106 S.Ct. at 1925.

Moreover, here, another forum exists for telephone customers to recover the alleged overcharges. *See Keogh,* 260 U.S. at 162, 43 S.Ct. at 49 (plaintiff could recover damages under Act to Regulate Commerce). Indeed, at least so far as the 83–600 rate is concerned, Northwestern Bell implemented a prospective rate decrease and refunded $32 million to telephone customers.

Second, we are persuaded that the relief the H.J. class seeks would, in fact, disturb uniform rates and the Commission's rate-making decisions. Despite its urging the contrary, the H.J. class seeks damages that necessarily and plainly challenge the rates previously approved by the Commission. *Cf. Clipper Exxpress,* 674 F.2d at 1276; *Litton,* 700 F.2d at 820. As the Supreme Court observed in *Arkansas Louisiana Gas,* the damages the H.J. class seeks "amount[ ] to nothing less than the award of a retroactive rate increase based on speculation about what the Commission might have done had it been faced with the facts of this case." 453 U.S. at 578–79, 101 S.Ct. at 2930–31.

The H.J. class responds that the court would not have to engage in a determination of just and reasonable rates because that amount has already been determined by the Minnesota administrative procedure, at least in relation to the 83–600 rate. The H.J. class asserts that the amount of the tainted increase was recognized as a matter of law when the Minnesota Court of Appeals ruled that the proceedings in the 83–600 case were tainted by Northwestern Bell's activities. *In re Minnesota Pub. Util. Comm'n,* 417 N.W.2d at 282–84. From this, the H.J. class gleans that all rates between 1980 and 1986 were tainted due to Northwestern Bell's bribery, and that its damages are equal to the amount of all rate increases during this time.

We cannot agree that the H.J. class's damages consist simply of all rate increases approved by the Commission between 1980 and 1986. Such a measure of damages would not only be speculative but also punitive. These damages would not be based on the H.J. class's alleged economic injury, as required by § 1964(c) of RICO. Section 1964(c) requires a RICO plaintiff to prove injury to his business or property. 18 U.S.C. § 1964(c). *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.").

Moreover, we are persuaded that using all rate increases as the measure of damages would impede state regulatory principles even more than a determination of the amounts in which the filed rates were excessive. For example, in the 83–600 reconsideration, the Commission determined that Northwestern Bell was entitled to a $45,-603,000.00 rate increase. To use the difference between that amount and the amount of the original increase ($57,148,000.00) as the basis for setting damages would result in an award far exceeding the H.J. class's economic injury and would be inconsistent with Minnesota law entitling Northwestern Bell to receive a "fair rate of return" and charge "just and reasonable" rates. Minn. Stat.Ann. §§ 237.075, subd. 6; 237.081, subd. 4 (West Supp.1992).

The H.J. class also asserts that other methods for determining damages exist without requiring the court to engage in judicial rate-making. The H.J. class points out that an administrative law judge initially examined all the rate requests, and that the Minnesota courts determined that the administrative law judge "was uninfluenced by [Northwestern Bell's] ex parte communications." 417 N.W.2d at 283. Based on this, the H.J. class suggests that the court can adopt as the basis for awarding damages the individual recommendations of the administrative law judge.

There is at least one fallacy in the H.J. class's reasoning. In the 83–600 case, the administrative law judge recommended a $36,100,000 rate increase. In its redeliberation, the Commission concluded that Northwestern Bell was entitled to a higher increase than the one recommended by the

administrative law judge. Thus, under the H.J. class's damage theory, it would recover the difference (trebled) between the originally approved rate of $57,148,000 and the $36,100,000 rate increase recommended by the administrative law judge, notwithstanding that the Commission, upon its redeliberation, approved the $45,600,000 rate.

We are convinced that the H.J. class's RICO damages can only be measured by comparing the difference between the rates the Commission originally approved and the rates the Commission should have approved absent the conduct of which the class complains. This is the exact measure of damages that the H.J. class requests in its first amended complaint. We reject the H.J. class's argument that the filed rate doctrine does not apply because it does not ask the court to engage in ratemaking activities.

## C

■ The H.J. class also argues that the filed rate doctrine does not apply because the rates in question were promulgated by a state rather than a federal regulatory agency, and the filed rate doctrine is a federal doctrine that applies only to federal regulatory agencies. The H.J. class points out that all the cases relied on by the district court involved a federal cause of action and a federal agency. The H.J. class does not, however, direct us to any case law ruling that the filed rate doctrine applies only to rates promulgated by federal agencies, and we do not believe this distinction is the basis for the application of the filed rate doctrine.

In *City of Kirkwood*, we held that if the plaintiff challenged the reasonableness of wholesale power rates set by the Federal Energy Regulatory Commission or retail rates set by the Missouri Public Service Commission, the filed rate doctrine would bar its claim. *See id.* at 1179. We made no distinction between the rates approved by the federal or state agencies. *See id.*

Although little case law exists on this question, we see no reason to distinguish

between rates promulgated by state and federal agencies. We are persuaded that the rationale underlying the filed rate doctrine applies whether the rate in question is approved by a federal or state agency.

## II.

We need not discuss in detail the district court's consideration of the clear statement doctrine or *Burford* abstention, as these rationales were not the basis for the district court's dismissal of the complaint, but simply provided "additional support" for its ruling that the filed rate doctrine barred the H.J. class's RICO claims. 734 F.Supp. at 884.

The district court rejected the H.J. class's argument that because the Commission has reconsidered the rates allegedly tainted by Northwestern's Bell's improper contacts and determined the amount of overcharging, no reason existed for the court to abstain. *Id.* at 886. The court reasoned that abstention doctrines "are concerned with preservation of the federal balance, and deference to the legitimate police powers of the states." *Id.* at 886 (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971)). The district court observed that the Minnesota Court of Appeals concluded that the H.J. class's unjust enrichment claim was barred by Minn.Stat. § 237.26 because such a claim constituted a collateral attack on the Commission's rate-making decisions. 734 F.Supp. at 886. The district court concluded that a treble damages award in the circumstances of this case would add "a severe sanction for the conduct in question for which the defendants would not otherwise be liable under state laws governing rate making," *id.*, and that the H.J. class's RICO claims similarly "constitute a collateral attack on state rate-making determinations." *Id.*

■ The Second Circuit recently addressed the clear statement[6] and Burford[7] abstention doctrines. *LILCO,* 907 F.2d at 1305–09. In *LILCO,* a county sued a utility and its former managers under RICO claiming that the defendants lied to the New York Public Service Commission to obtain higher electric rates. *LILCO,* 710 F.Supp. at 1389. After a verdict in the plaintiff's favor, the district court entered judgment notwithstanding the verdict for the defendants. The district court relied on the clear statement doctrine, *Burford* abstention, and federalism concerns underlying the tenth amendment. *Id.* at 1395–1404.

The Second Circuit rejected the district court's legal analysis, although affirming its judgment on other grounds. Concluding that the clear statement doctrine did not apply, the Second Circuit stated that the doctrine is a tool of statutory construction used when a statute or its legislative history is ambiguous, and that the RICO "statute is not ambiguous as to whether its proscriptions extend to a state-regulated public utility." *Id.* at 1306.

The Second Circuit also concluded that three circumstances weighed against the application of *Burford* abstention: that the RICO action involved only federal claims; that it would not unduly disrupt the state's complex administrative process; and that treble damages and attorneys' fees were not available in an action before the state's regulatory agency. *Id.* at 1308–09.

Adopting much of the same reasoning, the Eleventh Circuit in *Taffet* held that *Burford* abstention did not warrant dismissal of plaintiffs' RICO claims. 930 F.2d at 852–54. In addition to relying upon the reasoning in *LILCO,* the Eleventh Circuit added that *Burford* abstention was not appropriate because the plaintiffs had no damage remedy before the state agency as

the state agency could not award damages and could only set rates prospectively. 930 F.2d at 853 & n. 5. The Eleventh Circuit also concluded that an award of damages under RICO would not disrupt "the state's attempt to establish a coherent policy" because the court could calculate damages by applying a "set of pre-established decisions and procedures" to estimate what a prior rate would have been in the absence of fraud, without passing judgment on a decision of the state regulatory agency or setting a prospective rate. *Id.* at 853–54.

Although we do not decide whether the clear statement doctrine or *Burford* abstention bars the H.J. class's RICO claims, we observe that the foundations for those doctrines support our holding that the filed rate doctrine bars the claims. It cannot be disputed that the regulation of public utilities is traditionally a state concern. *See Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n,* 461 U.S. 375, 377, 103 S.Ct. 1905, 1908, 76 L.Ed.2d 1 (1983) ("the regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States"); 28 U.S.C. § 1342 (1988) (prohibiting courts in certain circumstances from "enjoin[ing], suspend[ing] or restrain[ing] the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a ratemaking body of a State political subdivision ...").

Here, as the district court observed, the Minnesota Court of Appeals concluded that Minn.Stat. § 237.26 barred the H.J. class's unjust enrichment claim. Allowing a RICO action for the identical conduct would similarly disrupt the state administrative process and constitute a "collateral attack on a rate order," contrary to state law. *See H.J. Inc.,* 420 N.W.2d at 676. We also observe that the Minnesota appeals court concluded that no private right of action

---

**6.** The clear statement doctrine "counsels that a federal court should not apply a federal statute to an area of traditional state concern unless Congress has articulated its desire in clear and definite language to alter the delicate balance between state and federal power by application of the statute to that area." *Taffet,* 930 F.2d at 851. The rationale underlying the doctrine is to

avoid Congress or the courts disturbing " 'the federal-state balance.' " *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) (quoting *Bass,* 404 U.S. at 349, 92 S.Ct. at 523).

**7.** *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**496**

existed under Minnesota's common or statutory law for the alleged bribery. *Id.* These rulings by the Minnesota appeals court support the district court's observation that allowing a cause of action under RICO would cause a "serious disruption of state regulatory policy." 734 F.Supp. at 887–88 n. 2.

We also note that the circumstances in both *Taffet* and *LILCO* are different from those here. In this case, the state agency, at least so far as the 83–600 rate is concerned, has already reviewed the 83–600 rate and determined it was "tainted." This resulted in a prospective rate decrease and a refund to telephone customers. Thus, not only are damages available through the state administrative process, they have actually been received.

### III.

Finally, the H.J. class argues that the court erred in dismissing its pendent state law claims. The district court dismissed the H.J. class's state law claims because the Minnesota state courts already had decided the claims. 734 F.Supp. at 888.

The H.J. class asserts that the state court proceeding is not binding on this court because the decision was from the Minnesota Court of Appeals, not the Minnesota Supreme Court.

The H.J. class's argument misses the mark. The decision of the Minnesota Court of Appeals is final as between these two parties and precludes relitigation in this action. *See, e.g., Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) ("A final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action").

We affirm the dismissal by the district court.